DOUGHERTY v. ROME, W. & O. R. Co.

(*Supreme Court, General Term, Fourth Department.* April, 1892.)

MASTER AND SERVANT—DEFECTIVE APPLIANCES—EVIDENCE.

Where the drop stakes of a flat car are lengthened by nailing strips thereon so as to reach to the top of a load of lumber which was higher than the drop stakes, and it appears that it was usual for the railroad company to transport lumber in that manner, such strips are part of the equipment of the car, which the railroad. company was obliged to make reasonably safe for the use of its employes. *Byrnes v. Railroad Co.*, 113 N. Y. 251, 21 N. E. Rep. 50, distinguished. *Bushby v. Railroad Co.*, 107 N. Y. 374, 14 N. E. Rep. 407, followed.

Appeal from circuit court, Oswego county.

Action by James Dougherty against the Rome, Watertown & Ogdensburg Railroad Company. From a judgment entered on a verdict in favor of plaintiff for $4,750, and from an order denying a motion on the minutes for a new trial, defendant appeals. Affirmed.

The action is brought to recover damages for personal injuries sustained by the plaintiff by reason, as he claims, of the negligence of the defendant. On the 16th of February, 1888, the plaintiff was in the employ of defendant as section foreman upon a portion of defendant's track a few miles westerly of the city of Oswego, and was engaged in leveling up the track at a place called "McFadden's Cut." While he was so engaged, a freight train of defendant came from the east, and, as it came up to where plaintiff was at work, he stepped to the north or right-hand side of the track, six or eight feet, but was hit by a piece of timber that projected from one of the cars in the train, and his thigh bone upon the left side was fractured. The car from which the timber projected belonged to the defendant, and was loaded with spruce lumber and timber. It was a flat car, having on each side four side arms or stakes that turned up. These were bolted to the side of the car, and turned on the bolts, so that when not in use they could be turned down. The loading of the car was spruce pulp lumber, so called, and it was loaded by the shippers at Richland. The height of the loading from the floor of the car was, according to evidence on the part of the plaintiff, about eight feet, while, according to evidence on the part of the defendant, it was five to six feet. The side arms or drop stakes of the car were lengthened by nailing on pieces of spruce board, reaching to the top of the load. These were called "false stakes." Then, across the top of the load, the stakes opposite each other were connected by strips of spruce board called "stay laths," which were nailed to the false stakes. After the injury, it was discovered that the false stake upon the rear end of the car upon the side next to the plaintiff was pulled from its fastening upon the drop stake, and was broken, and that the drop stake was also broken. There was

evidence tending to show that this false stake was improperly nailed upon the outside of the drop stake. It is alleged in the complaint that the defendant "did not provide the car with sound, proper, or safe stakes;" that it allowed the lumber to be secured "only by weak, insufficient, and unsafe stakes and binders;" that, knowing its condition, it "carelessly and negligently run said car;" that, "by reason of said weak, insufficient, and unsafe stakes and binders, said lumber and timber broke loose, and one large timber projected out a long distance from the side of the car," producing the injury complained of. At the close of the evidence on the part of plaintiff, as well as at the close of the case, the defendant moved for a nonsuit, upon the grounds (1) that there has been no cause of action proven here against this defendant, in behalf of this plaintiff, in that there was anything lacking in the duty which devolved upon the master towards the servant or employe in this case; and (2) that plaintiff, with full knowledge of the risks involved in his employment, was injured by the acts of negligence of a coemploye, and one in the same common line of employment as himself. This motion was denied, and defendant excepted.

The court, in giving the case to the jury, left it to them to say whether the defendant was guilty of negligence in not furnishing the proper equipment for the carrying of the lumber, and charged, at the request of defendant, that it was required to furnish only a reasonably safe equipment. The defendant's counsel asked the court to charge that the defendant was not responsible for any damage occasioned by the breaking of the folding or drop stake, and to this the court replied: "No, they are not liable for that, unless its breaking was occasioned by the breaking of the stake above. * * * Unless you are satisfied that the breaking of the drop stake was occasioned by the breaking of the other stake, then the defendant is not liable." Defendant's counsel excepted to the modification. The defendant's counsel asked the court to charge "that if this damage and injury occurred from the negligence of their station agent at Richland, in not having properly inspected, any omission of duty on his part, an omission of duty on the part of the conductor to inspect trains at the stations where he stopped, then it is the negligence of a coemploye, and the railroad company is not liable." To this the court replied: "If the jury should find that that was the sole cause, then they will find a verdict for the defendant. If they find that there were these and other causes operating, that is, insufficient equipment, that does not relieve the road from liability." The defendant excepted.

It was shown that defendant had a rule that "agents must not allow dangerously loaded cars to be taken from their station;" also that, "when cars are loaded by owners, agents must see that the freight is sufficiently secure to be hauled without moving or falling. They must also not permit cars dangerously overloaded to leave their station, until the excessive weight is removed;" also a rule, as to conductors, that "they will be held personally responsible for examining cars in their trains at every convenient point, especially at water stations, and, with the help of their men, must know that all cars are in safe condition, and no wheels or brakes broken."

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Edmund B. Wynn*, for appellant. *D. P. Morehouse*, for respondent.

MERWIN, J. There was evidence in this case from which the jury had a right to find that the injury happened by reason of the defective character of the false stake, so called, and the imperfect manner in which it was attached to the drop stake. Had they a right to say, as they did, in effect, by their verdict, that these defects in regard to the false stake were chargeable to the defendant? Was the false stake a part of the equipment of the car which the defendant was obliged to furnish under its liability to furnish a reasonably safe equipment for the use of its employes? The counsel for the defendant

claims that this case cannot be distinguished from the case of *Byrnes* v. *Railroad Co.*, 113 N. Y. 251, 21 N. E. Rep. 50, and that, under the authority of that case, the judgment here must be reversed. On the other hand, the counsel for plaintiff claims that the case of *Bushby* v. *Railroad Co.*, 107 N. Y. 374, 14 N. E. Rep. 407, fully sustains the theory upon which this case was given to the jury. In the *Byrnes Case* the plaintiff's intestate was in the defendant's employ as a brakeman upon a freight train, and was assisting in taking into the train a car loaded with lumber at a way station. While this was being moved to the main track, he got upon it to stop it, but, in consequence of the improper manner in which the car was loaded, the brake was rendered useless, a collision occurred, and he was injured. The car before it was loaded was in perfect condition, with a brake in good order, and entirely adequate for the purpose for which it was intended. By the negligence of the person who loaded the car, the lumber was placed against the brake rod, and also against the wheel at the top of the brake, so that thereby it became impossible to use it. The defendant by its rules made it the duty of the station master to either inspect the car himself, or have some one do so, before it was taken out, and, had this been done, the improper loading would have been discovered. It was held that the defendant was not liable, and that the question was not affected by the fact that the car was loaded by the owner of the lumber. The court in the opinion says: "It cannot, we think, be properly contended that the master fails to provide a car which is a safe and proper one, or that he fails to provide one with proper appliances, because, through the negligent manner in which the car is loaded, the appliance is, on that account only, made useless for the purpose for which it was intended." In the *Bushby Case* the plaintiff was in the employ of the defendant as a brakeman upon a freight train that had in it a car loaded with lumber, and was injured by reason of the breaking of a defective stake of the lumber car. The car, as furnished by defendant to the shipper, had iron sockets for stakes or standards, which were necessary in order to load the car. No stakes were furnished by defendant, as it was the practice of the defendant to furnish lumber cars without stakes, which were supplied by the shippers. The shipper put a stake in each of the sockets, and loaded the car with lumber, under the direction of defendant's station agent. The defendant claimed, among other things, that "the stakes were not appliances or machinery, within the rule which requires a master to furnish, with reasonable care, proper and adequate machinery or other appliances for the proposed work," but, on the contrary, "were appliances furnished and employed by the shipper in loading the car with lumber to be transported by the defendant." It was, however, held that the stakes were a part of the car, and that defendant was chargeable with negligence if it failed to exercise proper care that suitable and proper ones were furnished, and that defendant's practice or custom was no defense, as it only showed that it delegated to shippers a duty it should have performed itself. In the opinion it is said: "This rule should apply to any appliance which is made part of the structure, and it can make no difference that it may be for an occasion rather than constant use. The question relates to the condition of the car when placed in the hands of the servant, and its delivery to him raises for his benefit the implication that the employer has used suitable care and foresight in adopting it as an instrument or means to carry on its business. Upon this he might rely as an assurance, not only that the body of the car and its running gear were safe, but that the needed requirement for the reception of the load placed upon it was also fit for the purpose. The platform and the stakes constituted the bottom and the sides of the car, and one was as much a part of it as the other." In the same case at general term (37 Hun, 105) it is said by SMITH, P. J.: "The stakes were used to keep the lumber in place upon the car, and were a part of the apparatus and appliances necessary for the transportation of lumber. The transportation of lumber

was not an exceptional and unprecedented thing upon defendant's road. It was done frequently, and as often as occasion required. The defendant had provided cars for the purpose, furnished with pockets for the reception of stakes, and stakes were used whenever they were needed to keep the lumber in place. They, or some other apparatus to keep the lumber in position, were necessary to the prosecution of that branch of the defendant's business."

In the present case it is not claimed that the drop stake, as such, was defective, and the defendant claims it was not bound to furnish any other, and that whatever was done to lengthen this drop stake is to be deemed part of the operation of loading the car, and therefore within the principle of the *Byrnes Case.* There is evidence tending to show that the load upon this car was an ordinary sized load for a lumber car, and that it was a part of the business of the defendant to transport this kind of lumber in this way. There was no evidence that it was loaded any higher than was usual for such lumber, and not in the ordinary way. It is quite apparent that for the safe carriage of such a load it was necessary to have stakes as long as the drop and false stakes combined. It is therefore difficult to see how the liability to furnish suitable stakes did not cover the whole. The case would therefore seem to call for the application of the rule of the *Bushby Case,* and make it proper to treat the drop and false stakes together as the stake provided by the defendant. That being so, it would follow that the case on that subject was properly submitted to the jury. · The case of *Ford* v. *Railroad Co.*, 117 N. Y. 638, 22 N. E. Rep. 946, does not apply, as there the defendant had furnished suitable stakes, but the coemployes of the plaintiff's intestate had neglected to use them.

It does not appear that the station agent of defendant at Richland had anything to do with the loading of the car in question. He had, by the rules of the company, some duties in regard to the loading of freight cars. He testifies that he had nothing to do with the equipment of cars; that he saw that they were properly loaded. If the agent failed to perform his duty, and thereby contributed to the injury, that would not relieve the defendant from the result of the failure upon its own part to discharge its corporate duty. *Fuller* v. *Jewett*, 80 N. Y. 46. The court upon this subject charged as· favorably to defendant as it had a right to expect.

No question is made about contributory negligence. Upon the motion for nonsuit, a point was taken as to a release executed by the plaintiff, but this is not urged here.

It is further claimed by the defendant that the damages are excessive. The plaintiff received a severe injury, was confined to his bed about eight weeks, much pain and suffering were consequent upon the injury, and the necessary method of treatment. His leg was permanently shortened, and there is evidence tending to show that his nervous system is permanently affected. He was at the time of the injury about 32 years old, and his ability to labor materially impaired. We find no sufficient reason to disturb the verdict upon this ground. It follows that the judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.