WILLIAM ROWE, Respondent, *v.* THE NEW YORK CENTRAL AND
HUDSON RIVER RAILROAD COMPANY, Appellant.

*Personal injuries — contributory negligence not presumed — when a verdict will not
be set aside by the General Term as excessive.*

When it is shown, upon the trial of an action brought to recover damages for per-
sonal injuries, that the injury done to the plaintiff was caused by the failure of
the defendant to comply with chapter 565 of the Laws of 1890 (requiring trains
to stop at grade crossings), if no negligence is shown to have existed on the part
of the plaintiff, it will be assumed that he was free from contributory negligence.

Where a question of fact has been fairly submitted to a jury by a trial judge who
has listened to the testimony and exercised his power of supervision over the
verdict, his action in the premises is entitled to influence with an appellate
court in reviewing his refusal to set aside a verdict, and it is not the province
of the General Term of the Supreme Court to interfere with the verdict under
such circumstances, unless the amount thereof is so great as to indicate that
the jury was influenced by passion or prejudice.

APPEAL by the defendant, The New York Central and Hudson
River Railroad Company, from a judgment of the Supreme Court
in favor of the plaintiff, entered in the office of the clerk of the
county of Oneida on the 20th day of October, 1893, upon the ver-
dict of a jury rendered after a trial at the Oneida Circuit, and also
from an order entered in said clerk's office on the 12th day of Octo-
ber, 1893, denying the defendant's motion for a new trial made upon
the minutes, with notice of an intention to bring up for review on
such appeal said order.

The Rome, Watertown and Ogdensburgh Railroad Company
(owned and occupied by the defendant) crosses at right angles and
grade the Ontario and Western railroad at Central Square, Oswego
county. A signal is erected for the use of both roads to denote
when the crossing is clear. It was the custom of each road, on
approaching the crossing, to stop at a distance of some 800 feet from
the crossing at a post and whistle for a signal and wait until it
received a signal from the operator denoting that the road was clear.
About ten o'clock at night of the 2d of September, 1892, the plain-
tiff took his seat in the smoking car of the Ontario and Western
railroad, and the train, when it reached the grade crossing at Central
Square, stopped and called for a signal, and, upon receiving a signal

denoting that the road was clear, proceeded to cross; and while the smoking car in which the plaintiff was seated was standing at the crossing an engine drawing a freight train of cars for the defendant approached without stopping or waiting for a signal from the operator and ran into and collided with the smoking car in which the plaintiff was a passenger, causing the injuries complained of, at about twelve o'clock at night. Extensive evidence on each side was given as to the nature and extent and character of the injuries claimed to have been sustained by the plaintiff, and the appellant claims that the verdict is excessive and ought not to have exceeded in any event the sum of $500.

*C. D. Prescott*, for the appellant.

*Timothy Curtin*, for the respondent.

Hardin, P. J.:

Chapter 565 of the Laws of 1890 (Art. 2, § 36) provides that " all trains and locomotives on railroads crossing each other at grade shall come to a full stop before crossing, not less than two hundred or more than eight hundred feet from the crossing, and shall then cross only when the way is clear and upon a signal from a watchman stationed at the crossing." The evidence discloses that the defendant did not comply with the statute, and by reason thereof the accident occurred. Its train, at the time of collision, was going at the rate of about ten miles an hour. No negligence was shown on the part of the plaintiff, and it was properly assumed at the trial that he was free from contributory negligence. (*Chapman* v. *N. H. R. R. Co.*, 19 N. Y. 341; *Masterson* v. *N. Y. C. & H. R. R. R. Co.*, 84 id. 256; *Bagley* v. *Bowe*, 105 id. 171.)

The car in which the plaintiff was seated was struck by the defendant's engine, and a hole knocked in it, and, on the occasion of the collision, the car in which the plaintiff was seated was thrown off the track and apparently with sufficient force to overturn the freight house. The engine and smokestack and cowcatcher, after leaving the track, were severed from the tender of the engine, and evidence was given tending to show that the plaintiff was thrown from the seat he was sitting upon, striking upon his left hip and side, and that he was thrown across the car, which was tipped over on its

side, and on the morning of the accident the plaintiff found bruises on his left hip and side and several other places on his back, and he on that day procured liniment of Dr. Lindslay and applied it to the injured parts, and there is some evidence tending to show that the morning he arrived home he was lame, looked pale and haggard, and subsequently thereto was obliged to carry a cane for several months, and that prior to the injuries he was a strong healthy man, about twenty-five years of age; that he had theretofore never received any injuries or been ailing; that his usual weight was from 185 to 190 pounds, and that his weight at the time of the trial (October 9, 1893) was 161 pounds. Upon the trial several physicians, in behalf of plaintiff, testified in effect that the plaintiff's left limb is shorter than the right, and that there is a curvature of the spine in the lumbar regions; that the left side of the pelvis was let down or lowered and that the buttock on the left side was smaller than the right, and that the left limb near the hip was smaller and the flesh flabby, and measured less than the right, and that the right shoulder was lowered, and that a deformity exists which is quite observable. Numerous hypothetical questions were propounded to the physicians called on either side, and their opinions somewhat differ as to the physical condition of the plaintiff at the time of the trial and as to the causes which induced the conditions found upon an examination of the plaintiff, and as to whether the injuries will be of short duration, recovered from within a limited period, or whether they will be permanent. One of the physicians testified that " a degree of inflammation severe enough to produce permanent changes in the length of the limb would be attended by heat, pain, swelling and a much restricted function or ability to move the joint; a limitation of motion." Dr. Sutton, one of the defendant's physicians, testifies: "I don't think he (plaintiff) could have been injured in the accident sufficiently to have produced any shortening of the limb, which I say was the basis of the other trouble, without having been disabled for some considerable time;" and Dr. Flandrau testified: " The obliquity of the spine and all that sort of thing results from the shortening of the limb; it is wholly compensatory," and the physicians in their opinions seem to indicate that if the plaintiff had been sufficiently injured in the accident to have produced the shortening of his left leg as stated, that he would have been imme-

diately and continuously disabled, and the defendant gave evidence from several witnesses tending to establish a declaration made by the plaintiff after the accident that he had not received any injuries of any importance. The defendant produced considerable evidence tending to show the habits and practices of the plaintiff and his acts and doings subsequent to the injuries with a view of indicating that he had received no such injuries as were detailed by him and his witnesses. Among other circumstances disclosed by the evidence of the defendant it appears that the plaintiff attended a raising of a church bell at West Monroe and aided in placing the same in the belfry, and that the plaintiff volunteered to aid in properly placing it; that he climbed a ladder and went over the roof into the belfry, and that this occurred within a month of the accident, and that some two months and a half after the accident the plaintiff attended a barn raising; aided in elevating the timbers and went on top of the beams and drove in the pins to the frame, and that at about the same time he was at Danforth's cider mill two hours shovelling apples into a hopper, feeding the mill that ground the apples, and that he aided also in filling the barrels with cider from the vat and in hauling poles in the fall, and that in the early spring, after the accident, he went spearing fish, wading in the water and holding a lantern, and that on one occasion he bought a wagon and tested it by lifting it; that he attended a picnic and engaged in selling "fakir wares;" that he did some harrowing and hoeing, and chopped wood for family use, and drove in a wagon around the country buying chickens, and that he drove on two occasions to Syracuse, some twenty miles from his residence, and that apparently he walked without impediment when he desired to, and also furnished evidence of various other acts performed by him, and also called witnesses describing his appearance and condition tending to indicate that he had received little or no injuries. One of the witnesses called testifies: "The state that I found him in was caused from natural conditions; that they were congenital." Some of the incidents to which allusion has been made were disputed and explained by the plaintiff as a witness upon the stand, and it is pointedly urged by the learned counsel for the appellant that the acts and circumstances disclosed, to which, in part, allusion has been made, "are wholly inconsistent with the fact of a serious

injury at the accident," and that there is " no testimony that warrants the amount of the verdict in this case ; " and the learned counsel calls our attention to *Kummer* v. *Christopher & Tenth Street R. R. Co.* (50 N. Y. St. Repr. 332), where it was held : " It, is the right and duty of the General Term on appeal from an order denying a new trial to reverse the order when in its opinion, upon the evidence, the case of the respondent is a fabrication," and to the case of *Hamilton* v. *Third Ave. R. R. Co.* (53 N. Y. 29), and *Smith* v. *Ætna Life Ins. Co.* (49 id. 211), which support the same doctrine and recognize and assert the power of the General Term to review the evidence and set aside a verdict not satisfactory to the judgment of the court. In considering the argument of the learned counsel for the appellant we must bear in mind that where a question of fact has been fairly submitted by the trial judge to the jury, and he has listened to the testimony and exercised his power of supervision over the verdict, his action in the premises is entitled to have some influence with an appellate court in reviewing a verdict which he has sanctioned in refusing an order to set it aside, and it is not the province of this court to interfere with a verdict under such circumstances, unless the amount is so great as to indicate that the jury was influenced by passion or prejudice. ( *Valentine* v. *Broadway & Seventh Ave. R. R. Co.*, 16 N. Y. St. Repr. 602 ; *Quinn* v. *Long Island R. R. Co.*, 34 Hun, 334 ; *Harding* v. *N. Y., L. E. & W. R. R. Co.*, 36 id. 73 ; *Ehrgott* v. *Mayor*, 96 N. Y. 279.)

In *Dougherty* v. *R., W. & O. R. R. Co.* (45 N. Y. St. Repr. 154 ; S. C. affd., 138 N. Y. 641) this court sustained a verdict of $4,750 as not being excessive where it appeared that the plaintiff " was confined to bed eight weeks, suffered much pain, and his leg was permanently shortened and his nervous system affected."

Upon a review of the evidence found in the case now in hand it appears there is a conflict in respect to the many essential facts relating to the extent and character of the plaintiff's injuries, and there is considerable evidence tending to indicate that there has been an exaggeration on the one side, and many facts offered on the other tending to belittle the extent of the injuries sustained by the plaintiff ; and, perhaps, if the question was an original one, and we were at liberty to follow that line of evidence which makes most favorable for the defendant, we might reach a different conclusion from

the one pronounced by the jury as to the extent of the injuries sustained by the plaintiff. However, we regard it as within the province of the jury to determine where the truth is when the evidence is conflicting, and that the verdict under the circumstances is not such an one as indicates partiality, prejudice or corruption, and, therefore, we reach the conclusion that within the authorities that are applicable to such situations it is the duty of the court to sanction the verdict of the jury.

The judgment and order must be affirmed, with costs.

Martin and Merwin, JJ., concurred.

Judgment and order affirmed, with costs.