Gale agt. New York Central and Hudson River R. R. Co.

# SUPREME COURT.

## Isaac G. Gale agt. The New York Central and Hudson River Railroad Company.

*Action for a personal injury — New trial — Excessive damages — Newly-discovered evidence — Misconduct of a juror — Waiver — Costs.*

In actions for *personal injuries* the court will not grant a new trial on the ground of *excessive damages*, unless the damages are so outrageous as to strike every one with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from passion, prejudice, partiality or corruption.

It is not enough to say that, in the opinion of the court, the damages are too high, and that *it* would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for *personal torts or injuries.*

Although there are cases in which the court has sometimes *reduced verdicts* where the damages were excessive, it would seem to be a doubtful practice in actions for personal injuries. A jury, and a jury only, under the laws of our state, unless otherwise agreed upon by the parties, is the body to whom the duty of assessing damages in actions of this character is confided, and the law which enables a judge to fix and limit a recovery *after verdict* would seem to apply equally as well to a case *before verdict.*

The better practice would seem to be, where the verdict is so excessive as to justify the conclusion that it is the result of partiality, prejudice or corruption, to set it aside and order a new trial, and thus allow a new jury to assess the damages.

A new trial will not be granted on the ground of *newly-discovered evidence* where the evidence claimed to be newly discovered is cumulative, evidence of a similar character having been introduced upon the trial.

The alleged declarations of jurors as to the grounds of their verdict, cannot be received to impeach it. The affidavits of the jurors themselves could not be received for that purpose, and much less their unsworn statements made to a third person.

If the prevailing party to an action, with a view of influencing a juror by placing him under obligations to him, seeks and obtains an opportunity

Gale agt. New York Central and Hudson River R. R. Co.

so to do, a new trial will be granted. In such case the court could see that an effort had been made to improperly influence, and it would not stop to inquire whether the attempt had or had not been successful, but would assume that the party had, at least, partly succeeded in that which he had attempted.

When, however, the court is satisfied that there has been no attempt by the successful party to unduly influence a juror, either by conversation or by placing him under obligations, and that his action has not in fact been improperly influenced, then, even though the act may have been indiscreet, the court will not disturb the verdict.

On a Friday during the progress of the trial, the jury having been discharged till the following Monday, one of the jurors, being about twelve miles from home and having failed to obtain any other equally comfortable opportunity to reach his residence, asked the plaintiff, who had to go for a number of miles in the same direction, for permission to ride with him. To this the plaintiff consented. It was abundantly shown that nothing whatever concerning the cause upon trial was spoken of or discussed, nor were any words exchanged between the juror and the plaintiff, except when the juror left the sleigh, at the point where their routes homewards diverged, the juror thanked the plaintiff for kindness. Before the close of the trial the juror reported what he had done to the court, and the fact was known to the defendant's counsel, who made no objection to the juror for this reason. On motion to set aside the verdict for this cause:

*Held*, that the act done was not an officious one thrust by the prevailing party upon the juror for the purpose of procuring his good will and thus influencing action, but it was the result of neighborly courtesy and kindness, without any evil intent whatever, and is no ground for disturbing the verdict.

*Held*, also, that the fact that the juror rode home with the plaintiff being known to the defendant's counsel before the close of the trial, whilst the defendant would not, perhaps, be precluded from raising any objection founded upon any improper attempt to influence, which was then unknown, yet the objection, based upon the mere ride with the plaintiff, because not then made, must be deemed to have been waived.

An allowance to the plaintiff of two and one-half per cent for costs on the verdict of $14,000 deemed sufficient under the circumstances of the case.

*Albany Circuit and Special Term, May, 1877.*

MOTION by defendant for a new trial on a case with exceptions, and also upon affidavits relating to alleged newly-discovered evidence, and misconduct of a juror.

Gale agt. New York Central and Hudson River R. R. Co.

*Matthew Hale*, for defendant and the motion.

*Parker & Countryman*, for plaintiff and opposed.

WESTBROOK, *J.* — This cause was tried at the January, 1877, Albany circuit, before the judge giving this opinion, and resulted in a verdict in favor of the plaintiff for the sum of $14,000. The facts of the case were these: On the 8th day of July, 1873, the plaintiff was driving a pair of horses to a wagon laden with pressed hay from his home in Westerlo, Albany county, to Coeymans Landing. The distance between the two points was thirteen and a half miles. The road which the plaintiff traveled was known as the Coeymans and Westerlo turnpike, and its general direction was east and west. About one or two miles from Coeymans Landing, the Athens and Schenectady branch of the defendant's railroad, the general direction of which is north-westerly and south-easterly, crosses the said turnpike road, and in passing over the railroad track, in consequence solely, as the plaintiff claimed and as the jury must have found, of the railroad crossing being rough and out of repair, the wagon of the plaintiff broke down, causing him to fall so heavily as to break his right leg near the hip. The plaintiff was confined constantly to his bed until the first of October following, and his injured limb is now shortened one and a half inches, compelling him to use two crutches, and permanently incapacitating him for general labor. At the time of the injury the plaintiff was forty-five years of age, an unusually healthy and vigorous man, and had been and still is (so far as his disabled condition allows) an industrious and intelligent farmer.

The questions of fact which the case involves, were, as we think, after a careful reading of the charge, impartially and without any coloring submitted to the jury, and the result was the verdict above stated. Upon the subject of damages the jury were charged: "If you come to the question of

damages, then you will see that the injury was a serious one. The right leg was broken near the hip; he was confined to his house for several months, and the injury is probably incurable. Your damages should be by way of compensation — you are not to punish, but compensate — you are to make the plaintiff good and whole in dollars and cents for the loss he received by the negligence of the defendant, if you find for the plaintiff. For the remainder of his life he will be unable to labor as he has done in times that are past; and there is the bill of the physician, sixty-seven dollars and twenty-five cents. You can add also, by way of compensation, redress for the pain and inconvenience he suffered during the three months he was confined to his bed and house; you can compensate him for the pain and inconvenience he may suffer during the remainder of his life, if you find the injury will be permanent, and that plaintiff should recover; you are to measure out damages upon the principles of absolute justice and right. In this court-room we administer justice, not according to who the parties are, but according to the right and truth in every case. We have not a scale in which we weigh railroad cases, another in which to weigh other cases. We endeavor, as God gives us light, to weigh each case fairly and impartially; and you are to render such a judgment as will be approved by your own consciences and by Him who knows all hearts." This portion of the charge is given in full, because, in considering the first point made by the defendant, upon its motion for a new trial — the alleged excessiveness of the verdict awarded — it is important to see if any thing was said to the jury upon the subject of damages calculated to mislead, or to excite. Assuming that nothing which could have had such an effect was said, this ground for a new trial will now be considered.

In discussing the point, the remarks of KENT, C. J., in *Coleman* agt. *Southwick* (9 *Johnson*, 45), which has often been approved (*see, among other cases, Collins* agt. *The A. and S. R. R. Co.*, 12 *Barbour*, 496), should be borne in

Gale agt. New York Central and Hudson River R. R. Co.

mind : " The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances, and unless the damages are so outrageous as to strike every one with the enormity and injustice of them, and so to induce the court to believe that the jury must have acted from prejudice, partiality or corruption, we cannot, consistently with the precedents, interfere with the verdict. It is not enough to say that, in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries." Applying these principles to the case before us, let us see what elements of damages the jury had to consider : First. The actual loss in dollars and cents to a man of forty-five, before that in full health and vigor, who is rendered unfit for general labor. How many years of active and profitable personal toil remained to him, and what would that toil and labor have been worth to him each year, if the wrongful and negligent act of the defendant had not deprived him thereof ? Second. The pain and shock of the fall and fracture continued acutely during the months he was confined to his bed, with his limb drawn down with a strap so as to prevent its contraction, and also continued with more or less violence to the present time. Third. The pain and inconvenience which he must endure during the remainder of his life, every physical step in which is an inconvenience and a reminder of what he once was, and of his present actual condition ; and, fourth. The cost of medical and other attendance during the time of his actual confinement to his bed and to his house.

It will readily be seen that the case afforded the jury a wide range of thought, and of calculation. The main items of damages are these in regard to which the minds of men could readily differ. A sound leg has no particular market value, nor is the standard by which the damages caused by physical pain and suffering are to be measured to be found in

any commercial or legal table. They are to be estimated by the honest judgments of independent jurors, and with that judgment no court can interfere, unless it be so palpably and manifestly outrageous "as to strike every one with the enormity and injustice thereof." The occupation of a farmer, if pursued, as this plaintiff pursued it, as a means of livelihood, and doing the most of his own work, requires not only intelligence, but full bodily strength and the perfect use of every limb as well. At the age of forty-five, it is not unreasonable to suppose that there remained to the plaintiff twenty years, at least, of active, personal labor. Joined with his intelligence and former physical strength, and quickened, as a hired man cannot be, by self-interest, the value of the plaintiff's labor to himself during so many years must have been very great, and of that value who so competent to judge as a jury, composed, as this was, of farmers pursuing their avocations in the same locality? If twelve men of this character had, upon their oaths, unanimously fixed the loss in dollars and cents which the plaintiff has sustained, from incapacity to labor as formerly, at the amount of the verdict, would the result have been such an " enormity " as to authorize the court to brand them as prejudiced, partial or corrupt? The exquisite pain and torture of a fractured limb drawn and strapped for a period of nearly three months, intensified by the unchanging and fixed position of the body during those days and nights of weariness — the pain and inconvenience of succeeding years — the mental suffering resulting from a consciousness of a wrecked and broken body, how are these to be valued, and when valued by a legal tribunal, presumed to be honest, intelligent and impartial, where so much is committed to discretion and good judgment, by what rule is a court to pronounce that valuation so grossly flagrant, as by its deliberate opinion to pronounce the jury forgetful of duty and insensible to claims of right? It is immaterial, if the question had been left to it, at what figures the court would have assessed the damages of this plaintiff. Actual loss and

Gale agt. New York Central and Hudson River R. R. Co.

injury, to a very considerable amount, are apparent. With the data, which the cause affords, a very wide latitude and discretion were committed to the jurors, and after careful consideration we are unable to see how, within the rule for our guidance heretofore given, the verdict can be disturbed upon this ground.

We are aware that cases can be found in which the court has sometimes set aside and sometimes reduced verdicts. Upon what principle the latter has been done has never been very apparent. If the court reduces a verdict, what does it do which differs from an assessment by it of the damages in the action? A jury, and a jury only, under the laws of our state, unless otherwise agreed upon by the parties, is the body to whom that duty is confided, and the law which enables a judge to fix and limit a recovery after verdict would, as it seems to me, apply equally as well to a case before verdict. In either, the court, and not the jury, assess the damages, and upon what principle it may do so, is not to my mind clear. If the verdict is so excessive as to justify the conclusion that it is the result of partiality, prejudice or corruption, it should be set aside, and a new jury should, in my opinion, assess the damages. When there is no assessment by a jury (for a pretended one founded not upon an honest ascertainment and computation of loss, but resulting from spite or malice against the defendant, or from a desire to favor the plaintiff, is none in fact) the court ought not to ascertain and declare a result, the right to do which has been wisely committed to another body. Without formally deciding that the judiciary is without power to reduce the amount of a verdict in an action for a personal injury, a conclusion which is against precedents established by wise and upright judges, still for the reasons indicated, the exercise of such a power, which must depend upon discretion, would not now be assumed if the conclusion, as declared by the jury, could not be upheld.

It was strenuously argued by the learned counsel for the

defendant, that in no recorded case have damages as large as were awarded in this been given. The aim of this opinion has thus far been to show, not what verdicts have been sustained, and what disturbed, but what must be the result of the application upon this ground, assuming a well understood and defined rule for our guidance. Every case differs from its predecessor, and very rarely will two minds appraise the damages resulting from a personal injury at the same figures. There is, in every such case, great room for difference of opinion, and any person may well pause and shrink from saying, when a cause like this is before him, that the judgment which opposes his own is biased or corrupt. The following cases, however, in which large recoveries have been sustained, can be found: *Sloan* agt. *New York Central and Hudson River Railroad Company* (1 *Hun,* 540; 45 *N. Y.,* 125); *Hageman* agt. *Western Railroad Company* (16 *Barbour,* 353); *Ransom* agt. *New York and Erie Railroad Company* (15 *N. Y.,* 415); *Shaw* agt. *Boston and Worcester Railroad Company* (8 *Gray,* 46); *Laning* agt. *New York Central Railroad Company* (49 *N. Y.,* 525); *Saunders* agt. *The London and North Western Railway Company* (98 *Eng. Com. Law,* 889); *Filer* agt. *New York Central Railroad Company* (49 *N. Y.,* 42; *see error books in state library for amount of verdict*); *Downs* agt. *New York Central Railroad Company* (47 *N. Y.,* 83; *see error book on second trial, state library, and* 56 *N. Y.,* 664).

The result, then, of our examination is, that both on reason and precedent the application for a new trial, upon the ground of the excessiveness of the damages, must be denied.

The defendant, however, also claims that a new trial should be granted, because, since the one which was had, he has found a witness who was present at the accident who will testify that the plaintiff did not cross the defendant's railroad at the regular crossing, but to the south thereof. Evidence of the same character was given upon the former trial, and this would, therefore, be cumulative. For this reason, so

Gale agt. New York Central and Hudson River R. R. Co.

well-settled as not to call for authority, and without any examination of the impeaching and contradicting evidence produced by the plaintiff, a new trial upon this ground must also be refused.

The alleged declarations of jurors as to the grounds of their verdict, of course, cannot be received to impeach it. The affidavits of the jurors themselves could not be received for that purpose, and much less their unsworn statements made to a third person. Verdicts can never be made dependent upon the foolish or wicked after-statements of jurors in regard thereto. If such a rule should be adopted, it is apparent that no verdict could stand. It is due, however, to the jurors in this cause to state that their affidavits satisfy me that no statements were made by them of the character which the defendant claims.

The alleged misconduct of one of the jurors remains to be considered. On the second day of February last, this cause being on trial, and the jury having been discharged until the following Monday (February fifth), Thaddeus Pomeroy, one of the jurors, being about twelve miles from home, and having failed to obtain any other equally comfortable opportunity to reach his residence, asked the plaintiff, who had to go for a number of miles in the same direction, for permission to ride with him. To this the plaintiff consented. The sleigh had three seats, and the juror sat upon the back seat with Mr. Luman Stanton, one of plaintiff's witnesses. The plaintiff sat upon the front seat, and it is abundantly shown that nothing whatever concerning the cause upon trial was spoken of or discussed, nor were any words exchanged between the juror and the plaintiff, except when the juror left the sleigh at the point where their routes homeward diverged, the juror thanked the plaintiff for kindness. Before the close of the trial, the juror reported what he had done to the court, and the fact was known to the defendant's counsel, who made no objection to the juror for this reason. It is now, however, claimed that the verdict should be set aside for this cause.

If the plaintiff, with a view of influencing the juror by placing him under obligations to him, had sought this opportunity so to do, a new trial would be granted. In such a case the court could see that an attempt had been made to improperly influence, and it would not stop to inquire whether the wicked effort had or had not been successful, but would assume that the party had, at least, partly succeeded in that which he attempted. The following cases turned on this ground, or upon reasons analogous in principle, to wit, the intent of the party: *Walker* agt. *Walker* (10 *Georgia*, 203); *Walton* agt. *Hunter* (17 *id.*, 364); *Oberon* agt. *Mader* (40 *Iowa*, 662); *McDaniels* agt. *McDaniels* (40 *Vermont*, 363); *Ritchie* agt. *Holbrook* (7 *Sergt. & Rawle*, 458); *Phillipsburgh Bank* agt. *Fulmer* (31 *N. J. R.*, 53); *Cottle* agt. *Cottle* (6 *Greenleaf*, 140); *Knight* agt. *Freeport* (13 *Mass.*, 218); *Nesmith* agt. *Clinton Fire Insurance Company* (8 *Abbott*, 141).

When, however, the court is satisfied that there has been no attempt by the successful party to unduly influence a juror, either by conversation, or by placing him under obligations, and that his action has not in fact been improperly influenced, then, even though the act may have been indiscreet, the court will not disturb the verdict.

*Hilton* agt. *Southwick* (17 *Maine*, 303) fully covers, and more than covers the case before us. On a Saturday afternoon, after the trial had been commenced, one of the jurors rode home with the plaintiff, who was the prevailing party, in his wagon. "It also appeared, that the same juror before the cause came on for trial, during the term, went home with the son of the plaintiff, who was a witness, and stayed over night with him." Notwithstanding these facts, the court being satisfied that no attempt had been made to influence the juror, improperly refused to interfere. The court distinguished that case from *Cottle* agt. *Cottle* (6 *Greenl.*, 140), by stating that while in the one just referred to, it appeared that the hospitality extended to the juror was " done *not* as

an act of ordinary and neighborly kindness," yet in the case before it " although under the circumstances indiscreet and incorrect, it does appear to have been of *that* character."

The principle upon which the verdict in *Hilton* agt. *Southwick* was sustained — that the act done was not an officious one thrust by the prevailing party upon the juror for the purpose of procuring his good' will, and thus influencing action, but it was the result of neighborly courtesy and kindness, without any evil intent whatever, is not only sound in reason, but it and similar reasons have frequently guided and controlled the judgments of courts. A detailed examination of the cases will unnecessarily lengthen this opinion, and a simple reference to them is only made (*See Hadley* agt. *Cole*, 30 *Maine*, 9 ; *Martin* agt. *Mitchel*, 28 *Georgia*, 382; *Shea* agt. *Lawrence*, 1 *Allen*, 167 ; *White* agt. *Wood*, 8 *Cushing*, 413; *Jones* agt. *Vail*, 30 *N. J.*, 135; *Eakin* agt. *Morris Canal and Banking Co.*, 24 *id.*, 538; *Sexton* agt. *Selieverre*, 4 *Cole*, 11; *Morris* agt. *Vivian*, 10 *Mees. & Welsby*, 137).

The fact that the juror rode home with the plaintiff was also known to the counsel for the defendant before the close of the trial, and whilst the defendant would not, perhaps, be precluded from raising any objection founded upon an improper attempt to influence, which was then unknown, yet the objection based upon the mere ride with the plaintiff, because not then made, must be deemed to have been waived (*Fessenden* agt. *Sager*, 53 *Maine*, 531; *State* agt. *Daniels*, 44 *N. H.*, 383 ; *Fox* agt. *Hazelton*, 15 *Pick.*, 375 ; *Hallock* agt. *Franklin*, 2 *Met.* 560; *Martin* agt. *Sidwell*, 36 *Georgia*, 332).

Before closing this opinion, so far as it disposes of the motion for a new trial, it is proper to state that the jury in this cause was selected with great care, each one being carefully examined. Their answers and appearance showed them to be men of more than average character and intelligence. Nothing occurred upon the trial to cause the court to suspect their impartiality. When such a jury, after a careful hearing

and deliberation, has reached and announced a conclusion in a cause, in which very much is confided to their sound judgment and wise discretion, a judge ought to hesitate in pronouncing a verdict thus rendered to have been influenced by excitement, partiality, or corruption. Cases have arisen, and will continue to arise, where judges and jurors may widely differ in actions for personal injuries, as to the amount which ought to be awarded therefor, but such difference of judgment, in causes where there is great scope for diverging views, should not necessarily incline the former to think that their estimates are so much better than those of men to whom the law has confided the duty to ascertain them, as to enable them to say that the latter have been biased and impartial. That a case may arise in which the court should so hold, is probable. The judge, before trial is had, will generally, in such a case, see something in the conduct of jurors to justify such a conclusion. Nothing of this sort, as has already been said, appeared upon this trial; and looking at the facts of this case, though the verdict may seem large, the court can see that the conclusion reached may have been the result of a careful and impartial calculation of the pecuniary loss and injury which the plaintiff has sustained.

A single question remains to be disposed of, and that is, the allowance to the plaintiff for costs. Without formally deciding that the verdict is an unusually large one, it is apparent that the amount thereof will reasonably indemnify the plaintiff for his costs and expenses in seeking redress. It is also true, however, that the trial of this cause, as well as the resistance of this motion, must have subjected him to a heavy expenditure, and a good deal of labor. The order for allowance will, under the circumstances mentioned, be modified so as to award the plaintiff two and one half per cent, instead of five per cent, upon the verdict.