S. WALTER SCOTT, Appellant, *v.* THE SUN PRINTING AND PUBLISHING ASSOCIATION, Respondent.

*Libel — amount of the verdict — its reduction by the court, on the ground that the damages are excessive.*

When, on a motion by a defendant to set aside a verdict for the damages occasioned by a tort, the trial court allows the verdict to stand reduced in amount, such action is equivalent to holding that the plaintiff is entitled to recover upon the case as proved, but that the verdict is excessive in amount.

On appeal by the plaintiff from an order setting aside such a verdict, unless he stipulate to reduce its amount, the only question that can  properly  be  considered is whether the verdict should be set aside or modified as excessive.

In actions for torts, as, *e. g.,* an action for libel, the judgment of the jury and not that of the court must fix the amount of recovery, subject only to the qualification that when the damages found by the jury are flagrantly outrageous and extravagant, so as to evince intemperate passion, partiality or corruption on the part of the jury, the court may interfere, by setting aside the verdict

altogether or by directing the plaintiff to stipulate to take a less sum as a condition of retaining his recovery.

While the policy of reducing the amount of a verdict, instead of setting it aside absolutely, in a case calling for the interference of the court on the ground of excessive damages, may be questionable, the power of the court to do so is well established.

In an action brought by a physician to recover damages for the publication of a libelous article tending to charge him with being an accessory to the crime of murder, with the crime of perjury and with unprofessional conduct, the plaintiff recovered a verdict for $10,000. The trial court ordered that the verdict be set aside and a new trial be had, unless the plaintiff should stipulate to reduce the verdict to $4,000.

*Held,* that the court was not warranted in interfering with the amount of the verdict as rendered.

APPEAL by the plaintiff, S. Walter Scott, from an order made at the Washington Circuit and entered in the office of the clerk of Washington county on the 7th day of September, 1892, directing that a verdict for $10,000, recovered by the plaintiff, be set aside and a new trial be granted, unless the plaintiff should stipulate to reduce the verdict to the sum of $4,000.

The order appealed from was granted upon a motion by the defendant that the verdict be set aside and for a new trial, made upon the minutes, upon 'the exceptions taken during the trial and upon the ground that the damages awarded were excessive.

The action was brought by a practicing physician to recover damages for an alleged libel published by the defendant in *The Evening Sun,* a newspaper owned and issued by the defendant in the city of New York.

The article complained of was as follows:

"MAGGIE HORRIGAN'S MURDER.

"Revelations by Dr. Scott which may clear up the mystery.

"SARATOGA, N. Y., Dec. 30.—The mystery of the death of Maggie Horrigan, whose body was found in a pool between Greenwich and Middle Falls, Oct. 26th last, is about to be solved. The reward of $1,000 offered by the county and $500 by St. Peter's Church has brought out a statement from Dr. Scott, which if it does not explain the exact cause of her death reveals the probable manner of it.

"The statement will lead to the arrest and trial of certain parties, and make known the fuller criminal facts.

" The statement made by Dr. Scott is to the effect that he was called professionally to attend Maggie the night she was killed; that the girl was in a field in the custody of three men; that he was told that she was insensible from having fallen and struck her head on a stone; that he remained until she appeared to be dead. He told the men they were in a bad scrape and must do what they thought best with the dead girl, and went away.

" The men, to give the impression of suicide, carried the insensible but still living girl a long distance through the fields and placed her in the pool where she was found the next day.

" The man who secured the attendance of Dr. Scott is said to be Howard Bailey, son of the cashier of the Greenwich bank, and who has disappeared. The other two men were strangers.

" Dr. Scott conducted the first autopsy of the dead girl, examined all the internal organs, but made no examination of her head, and testified on the inquest his positive conviction that death was caused by drowning.

" A subsequent autopsy, at which he was not present, disclosed the wound on the head, and which was the real cause of her death.

" The facts known to Dr. Scott at the time of the inquest before the coroner, and when he gave his own testimony, are only now made public, in order to secure immunity from punishment and the rewards of money offered.

" All the revolting and terrible features of the case are only aggravated by the real facts as they become known. It is claimed that a message from the spirit of Maggie Horrigan through a ' writing medium ' contains a full story of the crime, and had much to do with influencing the statements which have been made in the case."

*C. C. Van Kirk*, for the appellant.

*Franklin Bartlett*, for the respondent.

MAYHAM, P. J.:

The only question that can be properly considered on this appeal is as to whether this verdict should be set aside or modified as excessive.

That seems to be conceded by counsel on both sides, and is the logical result of the order appealed from.

If the learned judge had felt called upon to interfere with the verdict for errors and exceptions on the trial, he would have set aside the verdict *in toto,* as he would have had an undoubted right to do, for such errors.

Allowing the verdict to stand reduced in amount is equivalent to holding that the plaintiff is entitled upon the case proved to recover, but that the verdict was excessive in amount.

Was the verdict within the rules of law governing such questions excessive to such a degree as to authorize the court, for that reason, to set it aside or reduce it?

In actions for torts, when the damages are necessarily unliquidated, the judgment of the jury and not that of the court must fix the amount of recovery, subject only to the qualification, that when the damages found by the jury are flagrantly outrageous and extravagant, so as to evince intemperate passion, partiality or corruption on the part of the jury, the court may interfere by setting aside the verdict altogether, or by directing the plaintiff to stipulate to take a less sum as a condition of retaining his recovery.

We are not aware that this rule has ever been departed from in this State, and it has the sanction of the Federal courts and the highest judicial authority in England.

This rule has been recently reaffirmed in this court.

In *Stephens* v. *The Hudson Valley Knitting Co.* (48 N. Y. St. Repr. 814) HERRICK, J., says: " In actions for damages for torts it is the well-established law of this State that verdicts of juries will not be set aside for excessiveness unless the amount is so great as manifestly to show that the jury must have been actuated by passion, partiality, prejudice or corruption." (Citing *Coleman* v. *South-wick,* 9 Johns. 45; *Gale* v. *N. Y. C. & H. R. R. R. Co.,* 13 Hun, 1; 53 How. 395; *Minick* v. *City of Troy,* 19 Hun, 253; *Whiteman* v. *Leslie,* 54 How. 495; *Collins* v. *A. & S. R. R. Co.,* 12·Barb. 492.) And he adds : " The case is one of that kind where, if the plaintiff is entitled to recover at all, it is peculiarly the province of the jury to say how much. * * * The question of damages in such cases is one which it is the special duty of the jury to determine, and while the court may reduce a verdict, it seems to me that ordinarily, if the court thinks the verdict is so large as to indicate that the jury was actuated by improper motives, it is

better to set the verdict entirely aside and have another jury pass upon it rather than determine itself what the verdict should be, and thus assume and exercise the functions of a jury."

While the policy of the reduction of the amount of a verdict by the court is, we think, properly questioned by the learned judge, its power to do so is conceded and seems to be established on authority (*Holmes* v. *Jones*, 121 N. Y. 461), yet the exercise of the power to interfere with a verdict on the ground that it is excessive, is confined to cases of manifest misconduct or impropriety on the part of the jury, as evidenced by the excessive and unreasonable amount of the verdict.

This rule was adopted in this State as early as the case of *Tillotson* v. *Cheetham* (2 Johns. 60), when the court said : " We cannot interfere on account of the damages. A case must be very gross and the recovery enormous to justify our interposition on a mere question of damages in an action of slander."

This language was quoted with approbation in *Root* v. *King* (7 Cow. 636) when the court refused to set aside or interfere with a verdict in an action for libel on the ground that it was excessive. In *McConnell* v. *Hampton* (12 Johns. 236) the court say : " To justify the granting a new trial the damages must be flagrantly outrageous and extravagant, evincing intemperance, passion, partiality or corruption on the part of the jury."

Tested by these rules we cannot concur in the opinion of the learned trial judge in setting aside or reducing this verdict.

The jury was required to assess these damages, and while this court or the trial court might as an original question have fixed a lower measure of damages, in view of the gravity of this charge, we cannot say that the jury, in arriving at and pronouncing their verdict, have evidenced by it that they were influenced by any of the improper motives which would authorize this court, within the rules of law above referred to, to set aside this verdict.

The order of the Special Term must be reversed, with ten dollars costs and printing disbursements.

PUTNAM, J., concurred ; HERRICK, J., not acting.

Order of Special Term reversed, with ten dollars costs and printing and other disbursements.