KRUG v. PITASS et al.

(Supreme Court, Appellate Division, Fourth Department. April 10, 1897.)

1. LIBEL—ACTIONABLE WORDS—IMPUTATION AGAINST PHYSICIAN.

An article is libelous per se where it says of plaintiff, a physician, "Can we trust the health of ourselves and our families to the care of such a man as" plaintiff? and also characterizes him as a "good for nothing wretch" and a disgrace to the community.

2. TORTS—JOINT TORT FEASORS—EVIDENCE.

In an action against joint tort feasors, evidence which is competent as to one will not be excluded because it is incompetent as to another.

Follett, J., dissenting.

Appeal from trial term.

Action by Julius F. Krug against John Pitass, Stanislaus Slisz, and Marcel Smeja for libel. From a judgment entered on a verdict in favor of plaintiff for $6,250, and from an order denying a motion for a new trial, defendants appeal. Affirmed.

The alleged libelous article was written by defendant Smeja, in the Polish language, and was published in said language in the Polak W. Ameryce, a newspaper of which defendant Pitass was proprietor and defendant Slisz was editor, published in the Polish language at the city of Buffalo. The following is alleged in the complaint to be a translation of the article into the English language:

"Respected Sirs: Excuse me that I trouble you, but I must complain to you of one German, a doctor, who lives off the Poles, resides among them, and all he is now and has now he has to thank the Poles for; nevertheless he insults them at every opportunity, and expresses himself indignantly about them. I will relate to you an instance, which I witnessed myself. It was on the evening of the 3d or 4th of February, of this year, when I met Dr. Krug on the corner of Broadway and Campbell streets. After greeting him, I inquired of him about the health of one of the members of our society, asking him to tell me if this member is truly sick. Dr. Krug got so mad about this that he began to halloo just as if the devils were skinning him, and he abused the Poles vehemently, with everything on which the world stands. He was hallooing that the Poles are damned cattle, a confounded nation, scoundrels, villains, sows, etc. Noticing the German had gone mad with rage, I admonished him to control himself, as such a thing could harm him a great deal; but Dr. Krug answered me, 'I do not care for the Poles; I can get along without them, and you can go to the devil.' All I have stated above I can corroborate by a sworn statement, and am willing to be responsible for the same. Now, I appeal to all Polish societies and all Poles in Buffalo to consider whether we can afford to allow any such fool as Dr. Krug to insult and disregard us. Can we trust the health of ourselves and our families to the care of such a man as Dr. Krug, who hates us in such a manner that he would drown each of us in a spoonful of water? General contempt should be shown to such a good for nothing wretch, who does not know that the Poles are just as good, if not better, citizens as is Dr. Krug. Such men as he is bring disgrace upon not only their own nationality, but upon all the American community. It is already time that the Poles in Buffalo should be convinced what kind of an enemy to them Dr. Krug is."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

John W. Fisher, for appellants.

Leroy Andrus, for respondent.

HARDIN, P. J. It seems the article published was libelous per se. Cruikshank v. Gordon, 118 N. Y. 178, 23 N. E. 457; Secor v. Harris, 18 Barb. 425; Carroll v. White, 33 Barb. 616.

2. The defendants gave evidence tending to show that they had no malice in the publication of the article. To rebut that evidence, plaintiff called Sullivan, who testified to a conversation with Pitass in 1890, which was objected to at folio 179, and in response to the objection the court observed: "This is direct evidence on the question of malice." To that ruling no exception was taken. After some evidence was given, a further objection was made, to wit, "that it is incompetent as against Smeja, and on that ground I move to strike it out." In response to that, the court observed: "It is incompetent as against Smeja, but is competent on the question of the malice of Pitass." To that ruling no exception was taken. Thereupon the defendant's counsel asked to have it stricken out, on the ground that it is incompetent as against Smeja. That was declined, and an exception was taken. Inasmuch as the evidence was admissible, it was not error to refuse to strike it out. Subsequently Frank A. Olszanowski was called as a witness, who gave evidence of a conversation with Pitass, and, when a question was asked if the witness had had a conversation with him, it was objected to, "on the ground that it is incompetent as far as the defendant Smeja is concerned." In response to that question, the court observed: "I think it is competent as to these people who are in-

quired about, and the objection is overruled." An exception was taken to that ruling. The effect of the ruling was to hold that it was competent as to the parties against whom it was offered. Before the evidence complained of was offered, Pitass, Slisz, and Smeja had testified, in effect, that they had no malice towards the plaintiff. To rebut that evidence, the testimony complained of was offered. It was legitimate evidence against Pitass and Slisz. When the court charged the jury, no request was made of it to limit the evidence complained of to the two defendants.

In Brown v. Allen, 4 Esp. 158, Lord Ellenborough said that the damages could not be severed, and give more against one defendant than the other, and it was proper for the jury to "give their verdict against both to the amount which they thought the most culpable of the defendants ought to pay." This case was decided in 1802.

O'Shea v. Kirker, 4 Bosw. 120, was an action of libel against two defendants, and it was referred to a referee. He found that one of the defendants injured the plaintiff to the amount of $150, and that the other injured the plaintiff to the amount of $600, and it was held by the court that the plaintiff "may enter judgment against both defendants jointly for the larger sum." It was further held, viz.:

"The judgment may be so entered, notwithstanding the referee decides that the plaintiff recover against the one defendant $150, and against the other $600 damages. When several persons are made defendants in an action of tort, in which it is alleged and proved that they jointly did the wrong complained of, each is as absolutely liable to the plaintiff for the whole damage as the other."

In Lee v. McLaughlin (Sup.) 4 N. Y. Supp. 742, it was said that the plaintiff is entitled to enter judgment "against all the defendants found liable for the largest sum found against any one."

It seems the exceptions do not require us to disturb the verdict in this case. During the trial, the plaintiff, in effect, asked to be permitted to discontinue the action as against Smeja.

Holley v. Mix, 3 Wend. 351, was an action for false imprisonment against Mix and Clute. The jury found for the plaintiff, and assessed the damages against Clute at 6 cents, and against Mix at $25. The case was removed into the supreme court on a bill of exceptions, and, near the close of the opinion, Savage, C. J., said:

"And, as there can be but one assessment of damages, the plaintiff is permitted to enter a nolle prosequi against Clute, and perfect judgment against Mix. This practice is justified by the cases cited (1 Saund. 207, note a), and the reason there given seems to be sound,—that as this action is several as well as joint, and as the plaintiff might originally have commenced his action against one only, so after verdict he may elect to take his damages against either of them; and, where several damages are given, the plaintiff may cure the irregularity by entering a nolle prosequi against all but one, and take judgment against him alone."

The motion for a new trial was denied, and leave was given to the plaintiff to enter a nolle prosequi against Clute.

If we were of the opinion that there was error as to the defendant Smeja, and considering the fact that the plaintiff offered to discontinue as to him, we might order a reversal of the judgment

as to Smeja, and affirm the judgment as to the other two defendants. My own inclination is to affirm as to the three defendants.

3. There seems to be no occasion to interfere with the amount of damages awarded by the jury. Scott v. Publishing Ass'n, 74 Hun, 285, 26 N. Y. Supp. 690; Bergmann v. Jones, 94 N. Y. 51.

Judgment and order affirmed with costs. All concur, except FOLLETT, J., dissenting.

FOLLETT, J. (dissenting). It was held on the trial that the article complained of referred to the plaintiff in his professional capacity, and was libelous per se. As I read the article, the only expression that can be construed to refer to the plaintiff in his professional capacity is: "Can we trust the health of ourselves and our families to the care of such a man as Dr. Krug, who hates us in such a manner that he would drown each of us in a spoonful of water." This court, by affirming the judgment, holds that this expression is defamatory of the plaintiff in his professional capacity. This being so, the article was libelous on its face, and the question of malice as affecting the right to recover compensatory damages was not an issue. It is a general rule, applicable to actions for libel, that, in case the jury find that the article was published by reason of the ill will of the defendant towards the plaintiff, exemplary damages may be recovered; but exemplary damages cannot be recovered of the defendant because of his general hatred of the plaintiff, but only for the ill will connected with the publication. In case the proprietor of a newspaper should publish an article libeling A., it could not be shown for the purpose of enhancing the damages that the plaintiff and defendant had not spoken for years. The plaintiff is entitled to recover compensatory damages for the particular article complained of, and the defendant is liable for exemplary damages for the particular malice, if any. that prompted that article. The defendant cannot be made to pay damages because of his general dislike of the plaintiff, which is not actionable, and for which damages cannot be recovered. Howard v. Sexton, 4 N. Y. 157; Bush v. Prosser, 11 N. Y. 347.

In the case at bar the plaintiff was allowed to show that in February, 1890, four years before the publication of the article complained of, the defendant Pitass made disparaging remarks in respect to the plaintiff, and also that about 1891 he made like remarks in respect to the plaintiff. Had the existence of malice been an issue in the case, it might have been competent, as against Pitass, to have received the evidence of his general ill will towards the plaintiff; and then, if the jury had been instructed that they could not assess damages because of the general ill will of the defendant towards the plaintiff, but that the evidence of general ill will was received for the purpose of allowing the jury to infer that the defendant's conduct complained of was prompted by ill will, no error would have been committed. The defendants Slisz and Smeja were not connected with these expressions of Pitass, made five years before the article complained of, and the jury should have been instructed that it was no evidence of malice as against them. It

seems to me that the jury has been allowed to assess punitive dam-
ages against Pitass for his supposed general ill will towards
the plaintiff, which was error, and also against the other two de-
fendants, which was also error.

Again, I know of no authority supporting the position that, in an
action against several defendants to recover damages for an arti-
cle libelous per se, punitive damages may be assessed against all
for the ill will of one of the defendants towards the plaintiff. The
furthest which any case has gone is to hold that, in addition to
compensatory damages, all the defendants may be punished in
damages for the particular malice of one of the defendants, which
prompted the wrong complained of, but this is an extreme doctrine.

The judgment and order should be reversed, and a new trial
granted, with costs to abide the event.