PETERSON v. EIGHMIE.

(Supreme Court, Trial Term, New York County. February, 1916.)

1. NEW TRIAL ⬱77(1)—GROUNDS—AMOUNT RECOVERED—PASSION AND PREJU-
DICE.
In actions for torts, where the damages are necessarily unliquidated, it is the prerogative of the jury to fix the amount, under proper instructions by the court, which has no legal responsibility to determine the

amount, and should not interfere with the verdict, in the absence of misconduct or passion or prejudice.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 157, 158; Dec. Dig. ☞77(1).]

2. NEW TRIAL ☞77(1)—GROUNDS—AMOUNT RECOVERED—PASSION AND PREJUDICE OF JURY—EVIDENCE.

Though a verdict might have been influenced by passion and prejudice, where such prejudice was created by acts of the defendant, he cannot complain.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 157, 158; Dec. Dig. ☞77(1).]

3. DAMAGES ☞132(7)—EXCESSIVE DAMAGES—PERSONAL INJURIES.

An award of $4,500 for injuries to the plaintiff, who was struck by defendant's automobile, thrown to the pavement, receiving an injury to the knee, and a fracture of both bones of the right leg near the ankle, and being forced to spend three months in confinement, resulting in permanent injuries, reducing her earning capacity at least $4 per week, *held* not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 378; Dec. Dig. ☞132(7).]

Action by Alma Peterson against George D. Eighmie. Judgment for plaintiff, and defendant moves for new trial and for reduction of the verdict. Motion denied.

Emil P. Korkus, of New York City, for plaintiff.
Manton Marks, of New York City, for defendant.

ROWLAND L. DAVIS, J. The plaintiff was struck by the defendant's automobile at the intersection of 125th street and Park avenue, in New York City, on June 2, 1914, and was thrown to the pavement, breaking both bones of the right leg near the ankle, and causing an injury to the knee. She spent several days in the hospital. The broken leg was kept in a plaster cast for more than a month, and she was confined to the bed for about six weeks, and to the house for more than three months. She suffered acute pain for four weeks.

The plaintiff was a single woman, 31 years of age, employed as a sewing machine operator, and her average earnings were about $16 per week. She did not return to work until January 10th following the accident, and then worked less than a month at reduced wages; and on March 1st she secured employment nearer home, receiving but $12 per week. The plaintiff gave evidence that it was necessary for her to use the right leg in starting and stopping her sewing machine, and she was unable to sit steady at work because of the deformity caused by the accident, and that her earning capacity was reduced.

It was claimed on her part on the trial that the broken bones were so near the ankle that in healing the bone had become thickened and hardened, and the foot was pushed and held down by a bony formation, causing a stiffness and immobility of the ankle joint. This caused such a deformity that it interfered with her ability to walk, and to go up and down stairs, and required her to wear a shoe with a high heel. Her physician testified that this condition was permanent. The

actual expenditures that the plaintiff made for medical services, medicines, and X-ray photographs amounted to $162. The verdict of the jury was $4,500. This is claimed by the defendant to be excessive, and he asks that either a new trial be granted or that the amount be reduced by the court.

[1] In actions for torts, where the damages are necessarily unliquidated, it is the prerogative of the jury to fix the amount of damages sustained by the party injured, under proper instructions given by the court. The court is charged with no legal responsibility to determine the compensation which should be rendered for injuries, and should not interfere with a verdict of a jury unless the amount is such as to show misconduct and impropriety on the part of the jury, or unless it should plainly appear that the jury must have been actuated by passion, partiality, or prejudice, or have acted under some improper bias or influence. Scott v. Sun Printing & Pub. Association, 74 Hun, 284, 26 N. Y. Supp. 690; Minick v. City of Troy, 19 Hun, 253, affirmed 83 N. Y. 514; 13 Cyc. 122. The verdict may appear large, in view of the injury; but, if it was the result of any passion or prejudice, it was not based upon any act or conduct on the part of the plaintiff on the trial.

[2] The defendant in his answer, and by evidence on the trial, denied that his machine collided with the plaintiff. It was his contention that the plaintiff stepped from behind a pillar of the elevated railroad into the street and ran into his slowly moving automobile; that she reached out and grasped the fender, and pushed herself back, and fell down, and the injury resulted. The plaintiff claimed that she was not behind the pillar at any time, but was in plain sight as she came along the sidewalk and stepped from the curb into the street; and she called as a witness on this subject one Lipp, a stranger, who happened to be looking out of a window in a building on the corner and saw the whole transaction. A policeman standing on the opposite side of the street witnessed the occurrence, assisted the plaintiff after the accident, and took the names of the parties and witnesses. Called as a witness, he corroborated plaintiff as to her position and movements. Lipp was entirely disinterested, and was a witness of unusually good appearance. He testified that the defendant sought him out shortly after the accident, and told him that he was taking care of plaintiff, reimbursing her for the time she was losing, paying her doctor bill, sending her flowers and magazines, and then asked him if he (Lipp) did not see plaintiff step from back of the pillar. Practically all of what the defendant told Lipp concerning what he was doing for the plaintiff was untrue, and it may be reasonably inferred that he was using that method to get favorable testimony for himself.

When the injury occurred a physician was passing, or was near at hand, and he rendered some first aid to the plaintiff before she was taken in the ambulance. He was a stranger to all the parties, but he might have been in a position to witness the accident. In December following the accident this physician was employed by the defendant as his expert to examine the plaintiff as to her physical condition, and

was called by the defendant on the trial as a witness to the accident, and as an expert on the extent of the plaintiff's injuries. It is hard to see how the defendant can escape the suspicion, at least, that his employment of this physician as an expert was for the purpose of obtaining from him favorable evidence as to the accident itself.

The defendant called an apparently disinterested witness by the name of Jansen, who chanced to be at the scene of the accident. Jansen corroborated the defendant on the issue that the plaintiff was standing behind the pillar and that she stepped off into the street looking in the opposite direction from that in which the car was coming. In fact, he gave evidence very similar to that of the defendant on nearly all controverted questions, and in contradiction of the policeman and the witness Lipp. On cross-examination he was asked if he had not told Lipp that the defendant was going to pay him for testifying. He answered that he had not. On the rebuttal Lipp swore that Jansen did tell him that. The defendant gave no testimony on the subject whatever.

Where there is misconduct on the side of a party on a trial, which causes passion or prejudice in the minds of a jury, bringing about a verdict in favor of such party, or where a party prevails by use of improper or dishonest methods, the verdict may be set aside and a new trial granted. Nugent v. Metropolitan Street R. Co., 46 App. Div. 105, 61 N. Y. Supp. 476; 29 Cyc. 773. It is possible that some prejudice was created in the minds of the jury in this case by reason of the facts just detailed, showing the methods employed by the defendant. The amount of the verdict may have been enhanced by the feeling in the minds of the jurors that the defendant's methods were bad. If so, should the defendant be permitted to take advantage of his own misconduct? Is he in a position to ask the court to relieve him of the consequences of his own acts? It seems to me that he is not entitled to much consideration from the court under such circumstances. Such methods and conduct on a trial are not to be encouraged.

[3] In view of the many determinations on similar questions in the appellate courts, it may well be said that in any event this verdict was not excessive. For similar injuries it has been held that damages in the sum of $4,500 to $5,000 are not excessive. Downer v. Metropolitan Street R. Co., 54 App. Div. 315, 66 N. Y. Supp. 719; Dougherty v. Rome, Watertown & Ogdensburg R. Co., 18 N. Y. Supp. 841,[1] affirmed 138 N. Y. 641, 34 N. E. 512; Ross v. Metropolitan Street R. Co., 116 App. Div. 507, 101 N. Y. Supp. 932; Bronson v. Forty-Second Street, Manhattan & St. N. Av. R. Co., 21 N. Y. Supp. 695;[2] Kellow v. Long Island R. Co., 16 N. Y. Supp. 676.[3]

The motion is denied.

[1] Reported in full in the New York Supplement: reported as a memorandum decision without opinion in 64 Hun, 633.

[2] Reported in full in the New York Supplement: reported as a memorandum decision without opinion in 67 Hun, 649.

[3] Reported in full in the New York Supplement: reported as a memorandum decision without opinion in 62 Hun, 620.