note, taken altogether, was a bona fide transaction, or whether it was a mere cover for usury, and this question was properly submitted to them.

But we think there was error in the refusal to charge a request made by the defendants to the effect that, upon the uncontradicted evidence, the inception of this note was its sale by Cokefair to Foster. There is no dispute about the facts, and there is no claim that this proposition was not a correct expression of the law; but the court refused to charge it, and submitted it to the jury to say whether the note then had its inception or not. In this refusal to charge we think there was error. The question presented to the jury was whether the transaction which resulted in the sale of the note was bona fide, or was a cover for usury. The transaction was not alone the delivery of the note by Cokefair to Foster, but it also included the delivery by Hagemeyer to Chew, and by Chew to Cokefair, and at the time of the making of that arrangement between the last two named there was, as appeared from the testimony of Cokefair, an agreement between himself and Chew with regard to the proceeds of the note. This transaction may or may not have been a proper one, but it had no relation to the inception of the note, and the question whether the note was usurious was to be determined by what occurred at the time of its inception; and the defendants were entitled to have the attention of the jury called precisely to what occurred at that time, so that they could pass upon that occurrence, and characterize that by their verdict as valid or otherwise, as they should, upon the whole, see fit. To that end, the defendants were entitled to have an instruction as to when the note had its inception, and the refusal to give that instruction was erroneous. On account of that refusal the judgment and order should be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur.

---

(17 App. Div. 582.)

### NUGENT v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. May 21, 1897.)

STREET RAILROADS—INJURY TO CHILD IN STREET.
    A finding that defendant's street-car driver was negligent in not stopping the car before it ran over plaintiff, a child 3 years old, is sustained by evidence that, as the car approached the place of the accident, plaintiff started to cross the street, and was about 10 feet in front of the horse when she reached the outer rail; that she was knocked down by the horse, and the front wheel of the car passed over her; that the driver was looking towards the opposite side of the street at the time; and that the car was running about 5 miles an hour, but could have been stopped within 12 feet.
    Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

Action by Harriet Nugent, an infant, by Harriet Nugent, her guardian ad litem, against the Metropolitan Street-Railway Company for personal injuries. From a judgment entered on a verdict

in favor of plaintiff, and from an order denying a motion for new trial, defendant appeals.    Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, PATTERSON, and PARKER, JJ.

John T. Little, Jr., for appellant.
Arthur C. Palmer, for respondent.

PARKER, J.    The plaintiff, when three years and eight months old, and on the 5th day of May, 1896, while crossing Madison street, at or near James street, in the city of New York, was knocked down by a horse drawing one of the defendant's cars, and run over by one of the forward wheels of the car, resulting in serious injuries, among them the loss of her leg at the knee.    The result of the trial was a judgment in favor of the plaintiff, and the only question requiring consideration on this appeal is whether the evidence will support the finding of the jury that the defendant was guilty of negligence.    The plaintiff sought to show that the driver, instead of looking in the direction in which his horse was going, fixed his attention on some object on the other side of the street, and thus his horse was permitted to go on unchecked until it struck the child with one of its fore feet, knocking it down, one of the wheels of the car passing over the child before the car was stopped; whereas, the car could have been stopped in time to have saved the child from harm, had the driver been attending to his duty, and made such an effort in that direction as he ought to have made.    The defendant's view of the character and force of the evidence introduced in its behalf is suggested by a request to charge made by the defendant's counsel after the court had instructed the jury:

"I ask your honor to charge the jury, if the jury believe that the car driver was standing on the front platform with his hand on the brake and looking ahead, and that the child ran suddenly across the street either from the north sidewalk or from the south sidewalk, and struck against the horse or against the side of the defendant's car, or ran two or three feet in front of the horse of the defendant's car, and that the car driver immediately applied the brake, and stopped the car so quickly that only the front wheel of the car reached the child, then the plaintiff cannot recover, and the verdict must be for the defendant."

The court charged as requested.    It must now be assumed that the evidence most favorable to the plaintiff's contention has been found by the jury to be true.    The inquiry, then, is whether such evidence charges the defendant with negligence.    The plaintiff, with a little broom in her hand, started to cross Madison street. From the curb on the north side of the street to the first track of defendant's railroad was a distance of 7 feet 6 inches; between such rail and the south rail the distance was 4 feet 2 inches.    It was between these two rails that the plaintiff was struck by the horse drawing the car.    Ellen O'Reilly testified that she lived near the place of the accident, and at the time of its happening stood in the doorway of her husband's store:

"I was watching the child coming across. I saw the car coming, and the driver's face was not turned towards the horse. He was looking at something that was on the same side of the street. It was a laundry that was there, and

there was some attraction there. * * * From the point that I stood I could see where the driver was directing his glances. He was looking towards the laundry. Q. When the little girl reached the first track, you say the horse was close to her? A. Quite close to her. Q. Now, at that time where was the driver facing? A. He was turned towards the laundry."

Sadie McDonald testified that on the 5th day of May she resided near the place of the accident, and saw from her window on the second floor of No. 39 Madison street:

. "I saw what occurred when the child reached the track. The front left leg of the horse struck the child. I observed the driver at that time. He was looking direct towards the laundry, on the down-town side of the street. * * * At the time the little girl went down, the driver was still looking at the laundry."

Margaret Fraser testified that she lived at 43 Madison street, and saw the accident. She saw the little girl on the sidewalk sweeping with a little broom, and then she saw her go from the sidewalk to the street as if she would cross it, but when she reached the northernmost rail of the car track defendant's car was about 10 feet from her.

"The horse was going as rapidly at the time the little girl reached it as it was at the time I first observed the horse. I did not see what the driver of that car was looking at. I know he was looking towards the up-town side,—looking down west, instead of looking east. This car was proceeding west. He was looking, his face towards the east instead of towards the west. He was turned around; he was looking around."

Margaret Splain, a witness for the plaintiff, said that she was riding in the car when the child was hurt, and that the car was going rapidly.

"At the time, or just preceding the time when I felt the jar, I observed that the driver of the car was looking to the opposite side from where the child was hurt,—from the side she was hurt. I was sitting on the side of the car that went over the child. * * * He was looking the opposite side from which the child was run over. The driver had been looking in that direction, before I felt the jar, about three or four seconds."

The extracts which we have taken from the testimony of four of the witnesses authorize a finding, which on this review we must assume was made by the jury, that the driver of defendant's car was not, at the moment of the accident nor for a few seconds preceding it, attending to his duty. While a street railway has the right of way upon the highway, still it is bound to make an effort to so operate its cars as to save others from injury. Men, women, and children, on foot or in conveyances, have the right to, and do, use the streets, and a car driver must be alert and watchful to avoid injury to those who, because of tender years, advanced age, enfeebled physical condition, or accident, do not get off the track at the near approach of a car. The negligent act complained of being established, the further question is whether the accident happened by reason of such neglect; for, if the accident must have occurred had the driver performed his full duty, the recovery cannot be sustained. It is urged that, when the child left the sidewalk to cross the track, the car was so near to the point of crossing that it was not possible for the driver to stop the car in time to avoid the accident. If the driver's testimony could be treated as accurately describing what took

place, there could be no doubt of the soundness of the appellant's contention, for he testified that when he first saw the plaintiff "she started to run from the gutter towards the middle of the street. She ran towards the way I was going; run straight into my horse. The little girl was going as fast as she could run." But again we are required to assume that the testimony of the plaintiff's witnesses has been accepted by the jury; and before referring to it it may as well be said that, after a careful consideration of all the evidence bearing upon the subject, we do not feel warranted in holding that the jury were not authorized to find the fact to be as testified to by them. Sadie McDonald testified that when the child reached the first rail of the track the front portion of the horse was about 5 feet from her. Margaret Fraser testified that when the plaintiff reached the rail of the track the horse's head was about 10 feet away from her. Mary Langstaff also testified that when the child reached the rail she was about 10 feet from the horse, and was walking. There was no obstruction to prevent the driver from seeing the child. Had he been looking in her direction, he could have seen her leave the sidewalk and pass over the 7 feet 6 inches between the curb and the first rail of defendant's road. As it appears that when she reached the rail the horse was still about 10 feet away from her, it necessarily follows that the horse was some further distance away when the plaintiff left the sidewalk to cross the street. By the driver's testimony, we are informed that the car was running time gait, or about 5 miles an hour, and that upon that grade it could have been stopped in about 12 feet. It follows that, had the driver attempted to stop the car at the instant the child reached the first rail, the wheel would not have passed over her. The horse's head was then 10 feet from her, and from the horse's head back to the wheel was at least 10 feet more. So, if the car had been stopped within the next 12 feet, the wheel would have lacked several feet of reaching the plaintiff. The jury were therefore at liberty to find that, had it not been for the driver's carelessness, the plaintiff's leg would not have been cut off by the wheel. There was also opportunity to find that, had the driver been looking in the direction pointed out by duty, he would have had even more than 20 feet within which to stop the car,—as many more than 20 feet as his horse traveled, going at the rate of 5 miles an hour, while the plaintiff was walking about 7 feet 6 inches. Enough has been said to make it appear that the finding of negligence by the jury has sufficient support in the evidence, and more need not be said.

The judgment should be affirmed, with costs. All concur, except VAN BRUNT, P. J., dissenting.