HARRIETT NUGENT, an Infant, by HARRIETT NUGENT, her Guardian ad Litem, Respondent, *v.* THE METROPOLITAN STREET RAILWAY COMPANY, Appellant.

*A judgment based upon perjury and subornation thereof, will be set aside* — laches *in moving.*

A judgment based upon perjured testimony, inspired and manufactured by one of the plaintiff's attorneys, who entered into a conspiracy with the perjured witnesses for the purpose of obtaining the judgment, will be vacated on motion of the defeated party.

The motion will not be denied on the ground of *laches*, simply because it was not made until after an appeal had been taken to the Court of Appeals from the judgment of the Appellate Division affirming the judgment thus fraudlently obtained.

APPEAL by the defendant, The Metropolitan Street Railway Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of November, 1899, denying its motion for a new trial upon the ground of newly-discovered evidence showing that the witnesses for the plaintiff upon whose testimony the judgment was recovered were guilty of perjury, and that the judgment was obtained by means of a conspiracy between the plaintiff and one of her attorneys.

*Charles F. Brown,* for the appellant.

*Andrew F. Murray,* for the respondent.

McLaughlin, J.:

This action was brought to recover damages for personal injuries alleged to have been sustained by the plaintiff by reason of the defendant's negligence.    At the trial the plaintiff had a verdict for $5,000 and from the judgment entered thereon the defendant appealed to this court, where the same was affirmed, the presiding justice dissenting (*Nugent* v. *Met. St. Ry. Co.*, 17 App. Div. 582), and an appeal was then taken to the Court of Appeals which is still pending.    After the appeal had been taken to the Court of Appeals the defendant moved upon affidavits and the printed case on appeal, to vacate the judgment and for a new trial upon the ground of newly-discovered evidence showing that the "witnesses for the plaintiff, upon whose testimony such judgment and verdict were obtained, were guilty of perjury, and the said judgment and verdict were obtained by means of a conspiracy between the plaintiff herein and  *  *  *  one of her attorneys and the said witnesses, and by means of imposition and fraud upon the court."

The motion was denied and an order entered to that effect, but upon a reargument the order was vacated and the matter sent to a referee to determine and report upon the questions of fact arising upon the affidavits used upon the motion, with a provision that the motion to vacate the judgment might be renewed upon the coming in of the referee's report.    In pursuance of this order several hearings were had before the referee and the testimony of many witnesses taken, including that of the plaintiff's attorneys, and all the witnesses who testified as to the cause of the accident at the trial. The referee reported, among other things, as follows : " I am fully convinced that a grave, great  *  *  *  injustice has occurred by reason of the fact of the entry of the judgment  *  *  *  in this action in favor of the plaintiff.  *  *  *  I am fully convinced that the judgment above referred to was obtained by collusion, fraud and conspiracy entered into on behalf of the attorneys for the plaintiff and of the several witnesses who had theretofore testified on behalf of the plaintiff.  *  *  *  From the testimony produced before me and my observation of the respective witnesses, I am convinced that the allegations in the defendant's affidavits, upon which the pending motion to vacate the judgment was originally made, are true in all material particulars, and that plaintiff's wit-

nesses, Sadie McDonnell, Mary Langstaff, Ellen O'Reilly and Margaret Fraser, all testified falsely before the jury as to material facts, and that the first two never saw the accident at all, and the last two never saw the things to which they testified. I am further convinced that these witnesses were produced at the trial with full knowledge of their incapacity on the part of plaintiff's attorneys, and that they had been coached and schooled in such false testimony by said attorneys, and that by the latter to a considerable degree such testimony was manufactured and inspired."

On the coming in of the report the motion to vacate the judgment was renewed and again denied upon the ground, as appears from the opinion of the learned justice who heard the motion, that he did not agree with the referee as to his findings of fact.

After a very careful examination of the voluminous record we are satisfied that the conclusion of the referee was amply sustained by the testimony taken by him. This testimony was to the effect that all of the plaintiff's witnesses at the trial who testified as to the circumstances of the accident, namely, Sadie McDonnell, Mary Langstaff, Ellen O'Reilly and Margaret Fraser, testified falsely; that two of them, at least, did not see the accident at all, and that the eyesight of another was so defective that she could obtain no accurate idea of it, and that the fourth did not see what she swore to.

Sadie McDonnell, one of the witnesses who testified at the trial as to the manner in which the accident occurred, testified before the referee that she did not see the accident, and that at the time it occurred she was so situated that she could not see it. She was corroborated in her statements before the referee by three unimpeached witnesses, and as to her testimony the referee stated: " I am entirely satisfied that the witness Sadie McDonnell swore falsely at the trial of this action; that she so committed perjury at the trial was indicated at the trial by the testimony as given at that time by Camille Patulli, that Sadie McDonnell could not have been a witness to the accident. Sadie McDonnell now, upon her sworn affidavit, annexed to the moving papers, confesses that she did so commit perjury. I believe that she tells the truth, and that it was physically impossible, from her physical situation, to have been a witness to the accident."

Mary Langstaff, another witness who testified for the plaintiff at the trial as to the cause of the accident, in her testimony before the

referee, stated that she did not see the accident, and that at the time it occurred she was inside the house talking to her mother, and she was corroborated in this statement by her mother. As to her testimony, the referee stated: "The witness of the plaintiff, Mary Langstaff, has also made an affidavit in which she confesses that she likewise, with Sadie McDonnell, committed perjury upon the trial in testifying that she had been a witness to the accident. Her testimony, as given before the undersigned, is corroborated by that of her mother, Emma Langstaff. I am likewise fully satisfied that she also could not have seen the accident from the most favorable position in which she placed herself at the time of the accident."

The witness O'Reilly, when examined before the referee, was suffering from impaired vision, which she admitted had existed for about five years, and to such an extent that it would have been impossible for her to see the accident from the location in which it is conceded she then was. As to her testimony the referee stated: "I am fully convinced that the witness on behalf of the plaintiff, Ellen O'Reilly, who swore that she saw the accident from in front of the news stand of her husband at No. 39 Madison street, could not have seen this accident clearly by reason of her impaired vision." The only other witness who testified for the plaintiff at the trial as to the cause of the accident was Margaret Fraser, and it requires only a casual examination of the testimony given by her before the referee, in connection with that given by her upon the trial, to show that little or no reliance can be placed upon it. If she told the truth before the referee, then she falsely testified at the trial as to material issues in the case, and as to her testimony the referee concluded: "There remains on behalf of the plaintiff in support of the judgment only the witness Margaret Fraser. Her testimony, as given before the undersigned when compared with that given upon the trial, is replete with contradictions, and I consider her testimony unworthy of belief."

The testimony taken by the referee not only justified his finding that these witnesses testified falsely upon the trial, but it also justified the finding that they were induced to give such false testimony by one, if not by both, of plaintiff's attorneys. The witnesses McDonnell and Mary Langstaff both admitted that they had committed perjury at the trial, and that they were induced to do so by

one of plaintiff's attorneys. It may be conceded that these witnesses having admitted that they once committed perjury, their testimony should not be accepted without corroboration. But they were corroborated as to their statements before the referee in every material particular, not by one only, but by several witnesses, as well as by the facts and circumstances connected with the case. If these corroborating witnesses told the truth, and there is no reason to doubt that they did, then one or both of the plaintiff's attorneys perpetrated a deliberate and willful fraud upon the court by entering into a conspiracy with the plaintiff and certain witnesses to obtain a judgment by false and perjured testimony.

The testimony given by these witnesses before the referee as to the false testimony given at the trial being inspired by the plaintiff's attorneys, was met only by a general denial of these attorneys, who were not entirely disinterested. Before the action was commenced they obtained a written agreement by which they were to have as their compensation for bringing and trying the action, fifty per cent of the entire recovery. The least that can be said is that the testimony before the referee was conflicting, and we know of no reason why the general rule in such cases should not be applied. The referee saw the witnesses, he heard them testify, observed the manner in which they gave their testimony, and he was in a much better position to pass upon the truthfulness and accuracy of their statements than the learned justice at Special Term. (*Westerlo* v. *De Witt*, 36 N. Y. 344; *Crane* v. *Baudouine,* 55 id. 256; *Baird* v. *Mayor*, 96 id. 567.) In *Baird* v. *Mayor* (*supra*) the court said: "When there is evidence on both sides and the case is balanced, and the mind of the court has been called upon to weigh conflicting statements and inferences and to decide upon the credibility of opposing witnesses, much weight must be accorded to the especial adaptation of the trial court to investigate and determine such questions. Any other rule would nullify the peculiar advantages which that tribunal possesses in observing the manner and appearance of the witnesses produced and the various physical and mental peculiarities by which the mind of the professional observer determines the degree of credit which ought prudently to be attached to oral testimony."

The finding of the referee is, as we have already said, not only

sustained by the evidence, but it is difficult for us to see how he could have reached a different conclusion. If we are right in this, then the motion ought to have been granted.

But it is urged that a judgment will not be vacated merely because it is based upon or procured by perjured testimony. This is undoubtedly the general rule, but in the present case there is something more than that. We have here, in addition to the perjured testimony, the fact that it was inspired and manufactured by one of the plaintiff's attorneys; that he entered into a conspiracy with the witnesses for the purpose of obtaining a judgment, thereby committing a fraud upon the court. The object of a trial is to do justice, and whenever it is made to appear that one of the parties to the litigation has by fraud, connivance, conspiracy or any other dishonest act prevented his adversary from having a fair trial, then the court never hesitates to use the power which it possesses to rectify that wrong by vacating the judgment obtained and directing a new trial. (*Ver Planck* v. *Van Buren*, 76 N. Y. 247; *Jordan* v. *Volkenning*, 72 id. 300; *Keister* v. *Rankin*, 34 App. Div. 288.)

In *Jordan* v. *Volkenning* (*supra*) Judge RAPALLO said: "There can be no question that a judgment or award obtained by false testimony, fraudulently given by the party benefited thereby, is voidable;" and in *Ver Planck* v. *Van Buren* (*supra*) Judge FOLGER said: "Fraud and imposition invalidate a judgment, as they do all acts;" and in *Patch* v. *Ward* (L. R. [3 Ch. App.] 203) it is said that there must be actual fraud, "Such that there is on the part of the person chargeable with it the *malus animus*, the *mala mens* putting itself in motion and acting in order to take an undue advantage of some other person for the purpose of actually and knowingly defrauding him. * * *. A meditated and intentional contrivance to keep the parties and the court in ignorance of the real facts of the case, and obtaining that decree by that contrivance."

Any fact which satisfies the court that a judgment has been obtained by fraud or deceit, or that the party against whom the judgment was taken was prevented by fraud or deceit from having a fair trial, is in and of itself sufficient to call for interference by the court. (*Ins. Co.* v. *Hodgson*, 11 U. S. 332; *Vaughn* v. *Johnson*, 9 N. J. Eq. 173.) Here it is more than abundantly proven that by perjury and subornation of perjury this judgment was obtained

It is also argued that the motion should have been denied on the ground of *laches*. We do not think so. In *Keister* v. *Rankin* (*supra*) this court held, the presiding justice rendering the opinion, that " It is never too late to do justice ; and where the ends of justice require that a new trial should be granted, the Supreme Court may act, although the case may have been in the Court of Appeals and disposed of there." The court is constituted to enforce legal rights and redress legal wrongs, and whenever it is made to appear, as it is in this case, that a wrong had been perpetrated, it never hesitates to exercise the power which it has, unless to do so would do a greater injury than to refuse to exercise it.

Justice requires that there should be a new trial in this case, and it follows that the order appealed from must be reversed and the motion granted, with costs to the appellant.

Van Brunt, P. J., Barrett, Rumsey and Ingraham, JJ., concurred.

Order reversed and motion granted, with costs.