[1] The respondent urges, in support of the judgment, that any ambiguity in the terms of the contract must be resolved most favorably to the insured. Such is no doubt the accepted rule (Rickerson v. Hartford Fire Ins. Co., 149 N. Y. 307, 43 N. E. 856); but there is no room for its application here, since the language of the contract is entirely unambiguous. It is also urged the word "or" should be substituted for "and" in the description of persons whose debts are insured against, hereinbefore designated "(2)," so that the policy will be read so as to cover indebtedness owing from old customers possessing "a capital *or* credit rating other than" one of those contained in the list of ratings included in Schedule A. There are undoubtedly cases in which the courts, in order to carry into effect the evident intention of the parties, will substitute "or" for "and," or vice versa; but there must be something in the context or elsewhere to clearly indicate what the intention of the parties was. Otherwise, to make such a change would be to make a new contract for the parties. We find nothing in the context, or in any other circumstances, to suggest that the parties intended to make· any other contract than that which is indicated by the language which they used. That language clearly excludes the indebtedness of Annie Scheinberg from the protection of the policy, and, in so far as the judgment appealed from rests upon a claim for indemnity against her indebtedness, it is erroneous.

[2] The policy provides only for the payment of losses exceeding what is termed an "initial" loss of $750. Since Annie Scheinberg's indebtedness, as we consider, is not covered by the policy, there remains only the claim upon the indebtedness of the Sanders Manufacturing Company, which is much less than the stipulated initial loss. It cannot, therefore, be recovered. This result necessitates a reversal of the judgment, and, as the essential facts cannot be changed upon a new trial, the complaint will be dismissed.

Judgment reversed, and complaint dismissed, with costs to the appellant in this court and the court below. All concur.

---

NUGENT v. METROPOLITAN ST. RY. CO.

In re OPPENHEIM.

(Supreme Court, Appellate Division, First Department. November 3, 1911.)

1. NEW TRIAL (§ 163\*)—ORDER—MODIFICATION—PERJURED TESTIMONY.

    Where, after a judgment against a railroad company, a new trial was ordered on the finding of a referee that the judgment had been obtained by a conspiracy between plaintiff's attorney and certain witnesses, whom it was alleged he had induced to testify falsely, such witnesses and others testifying to the perjury and that they ~were not then in the employ of the railway company, such order will be modified, so as to grant plaintiff the right to apply for reargument, on it subsequently appearing that the railway company had· paid the referee $2,500 for his report, a fee out of all proportion to his services, and that, during the pendency of the motion for new trial, the railroad company paid large sums to such retracting witnesses.

    [Ed. Note.—For other cases, see New Trial, Dec. Dig. § 163.\*]

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. ATTORNEY AND CLIENT (§ 61*)—DISBARMENT—OPENING PROCEEDINGS.

    Where, after plaintiff in a personal injury action had recovered judgment against a street railway company, a new trial was granted on certain of plaintiff's witnesses retracting their testimony and testifying that they had been induced by plaintiff's attorney to testify falsely, whereupon such attorney was disbarred, and it thereafter developed that such retracting witnesses and others, pending the motion for new trial, were being paid large sums of money by the railroad company, and that it also paid a large sum to the referee, who reported the facts on the motion for a new trial, far in excess of the value of his services, the attorney's petition for reinstatement will be referred to the official referee, and the Bar Association requested to take such action as the evidence warranted.

    [Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 61.*]

Action by Harriet Nugent against the Metropolitan Street Railway Company. On motion to vacate an order granting a new trial, and to reinstate Benjamin Oppenheim, an attorney, to his right to practice. Order granting new trial modified, and petition to vacate order of disbarment referred to the official referee.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Edward W. S. Johnston, for the motion.
Harford T. Marshall, opposed.

SCOTT, J. These two motions involve the same facts. In the first motion the plaintiff asks for a vacation of an order of this court granting defendant's motion for a new trial. In the second motion Benjamin Oppenheim asks that an order disbarring him be vacated, and that he be restored as a member of the bar.

The history of the case is as follows: On May 5, 1896, the plaintiff, Nugent, then an infant about 3½ years of age, was run over by one of the defendant's one-horse cars on Madison street. She was injured so that one of her legs had to be amputated, and she brought an action against the railroad company to recover damages for her injuries, in which Benjamin Oppenheim was her attorney. The cause came on for trial on June 4, 1897, before the late Justice Joseph F. Barnard, and resulted in a verdict for $5,000. On the trial no question was made as to the extent of plaintiff's injuries, nor to the fact that she was run over by the car; the sole controversy being as to the driver's negligence. The plaintiff's theory was that she had left the curb and started to cross the street when the car was yet some distance away, so that the driver, if he had been attentive, had ample time to have seen the child and avoided the accident, but that he was not looking ahead, but was looking over his shoulder to one side, at a white mother and her baby standing in the doorway of a Chinese laundry. An appeal was taken to this court, and the judgment affirmed, on October 19, 1897. See 17 App. Div. 582, 45 N. Y. Supp. 596. An appeal was taken to the Court of Appeals, but pending that appeal, and on May 24, 1899, a motion was made, upon an order to show cause, for a vacation of the judgment and a new trial, on the ground that the plaintiff's witnesses had been guilty of perjury, and that the verdict had been obtained as the result of a conspiracy between Oppen-

heim, the attorney, and said witnesses, and by fraud and imposition upon the court. It was referred to a referee, to take the proof of the facts. He reported that the charges of fraud and conspiracy had been established, and advised that the motion to vacate the judgment be granted. The Special Term, however, refused to confirm the report and denied the motion. On appeal to this court the order was reversed, and the motion to vacate granted. See 46 App. Div. 105, 61 N. Y. Supp. 476. The Metropolitan Street Railway Company thereupon instituted proceedings to disbar Oppenheim. These were referred to Hamilton Odell, Esq., who reported that the charges had been sustained, whereupon Oppenheim was disbarred. See 58 App. Div. 510, 69 N. Y. Supp. 524.

[1] It appears that, when Oppenheim was retained in the case (under a 50 per cent. contingent fee contract) and was in search of witnesses, he came across a young Italian barber, named Porcia, whom he employed to seek out witnesses. He found two young girls, who testified on the trial that they had seen the accident, and gave evidence relating thereto which served to sustain plaintiff's theory of the case. After the affirmance of the judgment by the Appellate Division, one Julian, an investigator in the employ of the railroad company, employed Porcia, on behalf of the railroad company, and by his aid got into touch with two of the witnesses, Mamie Langstaff and Sadie McDonald, as well as Emma Langstaff, the mother of Mamie, and one Samuel Strom. These all made affidavits, in support of the motion for a new trial, to the effect that Mamie Langstaff and Sadie McDonald had not seen the accident at all, and so informed Oppenheim, but that under his urging and inducement they had agreed to tell the stories which they told on the stand, in which, they said, they had been carefully coached by Oppenheim. Samuel Strom testified that Oppenheim had unsuccessfully attempted to induce him to testify falsely upon the trial.

Before the referee all these witnesses reiterated and amplified the statements in their affidavits, and all of them, except Porcia, swore that they had received no compensation from the railway company. Porcia swore that he had been paid a small amount, not exceeding $40, for services in other cases, but nothing whatever for services in this city. The referee, on the motion for a new trial, as has been said, reported in favor of the company's application. It is alleged, and not denied, that he was paid by the railroad company a referee's fee out of all proportion to his services. Substantially the same evidence used on the motion for a new trial was also used on the application for Oppenheim's disbarment.

It is quite evident, from a reading of the opinions in this court, that the basis for granting the new trial and for disbarring Oppenheim was the belief that Oppenheim had conspired with the witnesses Langstaff and McDonald and had induced them to commit perjury on the trial. The sole foundation for this belief was the evidence given by those witnesses, and the others above named, before the two referees to whom were referred the motion for a new trial and the application for disbarment. If it had appeared that all those witnesses

were then in the pay of the railroad company, it is certainly very doubtful whether this court would have accepted their evidence. It does now so appear.

By a curious combination of circumstances, there came to light, during the trial of the charges against District Attorney Jerome, a trunkful of vouchers showing payments by the Metropolitan Street Railway in connection with actions for damages. From this it appears (and is not disputed) that all of the witnesses upon whose evidence the motion for a new trial and the disbarment of Oppenheim was granted were under pay from the railway company before and during the time that these proceedings were pending. The motion for a new trial was made May 24, 1899. Porcia was paid various sums from December 5, 1898, to April 20, 1901, aggregating $1,119.50. Of this amount he had been paid $227 up to June 20, 1899, when both he and Julian testified that he had been paid in all not to exceed $40 or $42. Mary Langstaff, one of the retracting witnesses, who swore that she had been paid nothing, was in fact paid $160, commencing May 24, 1899, down to July 16, 1901. Mrs. Langstaff, her mother, was paid $250 from May 24, 1899, to April 3, 1900. Sadie McDonald, the other retracting witness, was paid $462 from May 15, 1899, to April 3, 1901. Samuel Strom, who testified that Oppenheim tried to induce him to swear falsely, was paid $100 from May 24 to September 22, 1899, and his father and brother were paid $40 and $50, respectively.

It is significant that the payments to the principal witnesses began at or about the time the motion for a new trial was made, and continued until both the motion for a new trial and the petition for disbarment had been concluded. Procia, who appears to swear with equal facility on either side, now swears that all of this testimony before the referee was false, and Julian, who is said to have engineered both proceedings, has now quarreled with the company and swears that Robinson, the solicitor for the company, told him that McBride had been paid $2,500 for his report. Robinson does not deny this.

I am disposed to think that both cases should be reopened. So far as concerns the order for a new trial, we cannot, of course, vacate that upon new evidence not before the court on the appeal. We can, I think, however, modify our order, by adding a proviso that plaintiff may move for a reargument at Special Term upon new affidavits.

[2] So far as concerns the disbarment proceedings, I think we should refer the petition for reinstatement to the official referee, and ask the Bar Association to intervene and take such action as the evidence to be adduced may seem to require. All concur.