(October 1, 1915.)

# MRS. FRED H. LOHR, Appellant, v. BOWEN CURLEY, Respondent.

[152 Pac. 185.]

DELINQUENT TAX SALE—MISTAKE OF OFFICIAL—AFFIDAVIT FOR PUBLI-
CATION OF SUMMONS—DUE DILIGENCE—JURISDICTION OF COURT.

1. Where a nonresident property owner had paid taxes on a city
lot described as lot 33, block 44, of Crow's Addition to the city of
Idaho Falls, from the year 1892 up to and including the year 1904,
but in 1904 the tax payment was erroneously credited by the as-
sessor and tax collector to lot 33, block 48, with the result that the
taxes for 1904 on lot 33, block 44, appeared to be delinquent, and
thereafter said lot was sold to the county for delinquent taxes, and
subsequently a purchaser from the county obtained a tax deed
therefor; *held*, that when the county issued the certificate of sale
for said lot to itself, such certificate was not based upon any lien
legally created against said property, and the assignment of such
certificate and subsequent tax deed based thereon did not divest the
rightful owner of title.

2. Sec. 4145, Rev. Codes, as amended, Sess. Laws 1909, p. 186,
setting forth the requirements for the publication of summons
against a nonresident defendant or one whose whereabouts are un-
known, and prescribing that "an affidavit setting forth in ordinary
and concise language any of the grounds as above set forth upon
which the publication of the summons is asked for, shall be suffi-
cient without setting forth or showing what efforts have been made
or what diligence has been exerted in attempting to find the defend-
ant," does not dispense with the use of due diligence to ascertain
the residence or postoffice address of the defendant, and the mere
assertion of diligence in the affidavit is not a compliance with the
statute. Where it is shown that by the exercise of ordinary dili-
gence such facts might have been ascertained, the court will be
deemed not to have acquired jurisdiction over a defendant by publi-
cation of summons based on such affidavit.

3. Where, in a suit to quiet title brought by the holder of a
tax deed for a city lot, the plaintiff makes affidavit for publication
of summons to the effect that the former owner of the property,
named as a defendant, could not after due diligence be found within
the state of Idaho or at all, and that the plaintiff could not after
due diligence ascertain the residence or postoffice address of the

said defendant, when it appears that the true name and address of said former owner are given in full upon the county assessment-roll, both before and after the sale of said property for delinquent taxes, and at the time said suit was brought, *held*, that the maker of said affidavit did not use the diligence that the law requires.

4. If the owner of land, or one having interest therein, applies to the proper officer for the purpose of paying the tax thereon, and payment is refused or prevented by such officer through a mistake on his part, such tender of payment is the equivalent of payment of such tax, to the extent that it bars the attaching of a lien based upon actual nonpayment.

APPEAL from the Ninth Judicial District for Bonneville County. Hon. James G. Gwinn, Judge.

Action to quiet title to certain property in Idaho Falls. Judgment for defendant. *Reversed.*

A. S. Dickinson, for Appellant.

A payment to the proper officer is a sufficient payment of the tax, whether the county actually gets the money or not; the tax lien is thereby discharged, and the county has no right thereafter to sell the property and can acquire no equity therein by such a sale. Such a sale is void and the assignee of such certificate can acquire no equity in the land. (*Griffith v. Anderson*, 22 Ida. 323, 125 Pac. 218; *Taylor v. Debritz*, 48 Wash. 373, 93 Pac. 528; *Bullock v. Wallace*, 47 Wash. 690, 92 Pac. 675.)

The acts, orders and judgments of courts which are irregular or void are chargeable to the party procuring them, and it is their duty to see that they are correct. (*Park v. Higbee*, 6 Utah, 414, 24 Pac. 524; *Parsons v. Weis*, 144 Cal. 410, 77 Pac. 1007.)

An inspection of the affidavit for publication of summons shows that the same fails to state whether or not the appellant. who was a defendant in that action, resided within this state or was a nonresident. It simply states that she cannot after due diligence be found within the state of Idaho, or at all. (*Mills v. Smiley*, 9 Ida. 325, 331, 76 Pac. 783; *Ricketson v. Richardson*, 26 Cal. 149, 154.)

Another feature of this affidavit is the further allegation, "Nor can the plaintiff, after due diligence, ascertain the residences or postoffice addresses of any of the defendants" (naming them). An examination of plaintiff's exhibits "B," "G," "H" and "I" leads to the conclusion that this allegation was wilfully false. He had only to go to the tax-rolls of Bingham county, with which he was presumed to be familiar, and there he would have found both the postoffice address and the street residence of the appellant for the last eighteen years, and that she had been the owner and paying the taxes on lot 33 in block 44 of Crow's Addition to Idaho Falls all those years. By this statement in the affidavit he induced the clerk to make an order to the effect that no copy of the summons and complaint need be mailed to any of the defendants, which was entirely unauthorized by law and a nullity. None was mailed and the appellant had no notice of that action or information concerning it until 1912, after the commencement of this action. (*Strode v. Strode,* 6 Ida. 67, 96 Am. St. 249, 52 Pac. 161; *Mills v. Smiley, supra; Goodale v. Coffee,* 24 Or. 346, 33 Pac. 990; *Irvine v. Leyh,* 102 Mo. 200, 14 S. W. 715, 126 S. W. 10, *Dunlap v. Steere,* 92 Cal. 344, 27 Am. St. 143, and note, 28 Pac. 563, 16 L. R. A. 361.)

St. Clair & St. Clair, for Respondent.

The method of preparing the assessment-rolls for 1904, 1906, 1908 and 1909 would preclude the possibility of a person, by examination of the tax-rolls, finding an assessment of this or any other property where the assessment was made in the name of a stranger to the record title. In this case the record title at that time stood in Mathilda Jahr, and we were entitled to bring suit to quiet title for Mr. Curley against the appellant in the name under which she held title, being the name of Mathilda Jahr. As the record showed title in Mathilda Jahr, it could not reasonably or at all be expected that search of the tax-rolls be made for an assessment in the name of Mrs. Fred W. Lohr. (*Emery v. Kipp,* 154 Cal. 83, 129 Am. St. 141, 97 Pac. 17, 16 Ann. Cas. 792, 19 L. R. A., N. S., 983.)

It is necessary, in order to make an objection to the jurisdiction in a direct attack upon the judgment, to set forth in the complaint specifically the facts showing the falsity or bad faith of the affidavit for publication. (*Cargile v. Silsbee,* 148 Cal. 259, 82 Pac. 1044; *Eldred v. White,* 102 Cal. 600, 36 Pac. 944.)

It is necessary to specifically allege the facts constituting the alleged fraud to obtain equitable relief against a judgment claimed to have been procured by fraud. (*King v. Clay,* 34 Ark. 291; *Shufeldt v. Gandy,* 25 Neb. 602, 41 N. W. 553; *McDonald v. Pearson,* 114 Ala. 630, 21 So. 534; *Thompson v. Caddo County Bank,* 15 Okl. 615, 82 Pac. 927.)

"The 'fraud' for which a judgment may be set aside must be actual fraud, involving intentional wrong as distinguished from legal or constructive fraud." (*Wagner v. Beadle,* 82 Kan. 468, 108 Pac. 859.)

BUDGE, J.—This suit is one in equity and is, in effect, to set aside a former judgment between the parties wherein the title of the appellant to lot 33, of block 44, of Crow's Addition to the city of Idaho Falls was, by an action brought by the respondent, quieted in him. Service was had of the summons in said action by publication, and default was taken against the appellant.

The original complaint in this suit was filed on December 5, 1912, and the answer and cross-complaint thereto were filed on April 12, 1913. Subsequently the plaintiff, by leave of the court, filed an amended complaint, to which the defendant filed an answer and cross-complaint, and this cause was tried upon the amended complaint and the answer and cross-complaint.

In her amended complaint the appellant claimed that she was the owner and entitled to the possession of lot 33, block 44, Crow's Addition to the city of Idaho Falls, and that the defendant was asserting an adverse claim thereto.

The facts, as we gather them from the record, are as follows:

Appellant purchased the lot involved in this litigation in 1892 and paid the taxes thereon regularly up to and including

the year 1904. John Wray was the assessor and collector of Bingham county during that year, and received the taxes from the appellant prior to the date they became delinquent for the year 1904; but in making up his tax-roll, he listed lot 33 in block 48 to the appellant and credited the payment made to him as *ex-officio* tax collector on that lot instead of on lot 33 in block 44, which resulted in the taxes on lot 33, block 44, appearing delinquent. One Danielson succeeded Wray as assessor and collector, and on July 10, 1905, sold lot 33, block 44, the appellant's lot, for delinquent taxes for 1904; Bingham county becoming the purchaser. On November 26, 1907, Bingham county sold the certificate of sale received by it to the respondent for $2.60. The respondent obtained a tax deed some time during 1908.

The record further discloses that the appellant has paid all of the taxes assessed against lot 33, block 44, Crow's Addition, since 1892, down to and including 1912, except 1905, when it was not assessed, and in 1909, when the collector refused her money on the ground that the taxes were already paid.

When appellant purchased the lot in question she was unmarried, and her name was Mathilda Jahr. Prior to 1904, she married Fred W. Lohr, and her name and address appear upon the assessment-roll of Bingham county for 1904, as "Mrs. F. W. Lohr, residence, Aurora, Ill., 434 Talma street." The lot is described upon that assessment-roll as "lot 33, block 48, Crows [additional]." The name and address of Mrs. F. W. Lohr is also upon the assessment-roll for 1906, 1907 and 1908; but upon each of these last three assessment-rolls lot 33, block 44, Crow's Addition properly appears. The error in the description of the lot appears only for 1904.

On November 16, 1909, the respondent filed an action in the district court of the sixth judicial district in Bingham county, entitled *Bowen Curley v. Henry M. Sanfield, Mathilda Jahr, et al.*, to quiet title to lot 33 in block 44, as well as to other lots which he had purchased in a similar manner. Service was had on Bingham county and on December 4, 1909, the respondent made an affidavit in said action to procure an order for the publication of summons upon the defendants and,

among other things, recited in said affidavit that Mathilda Jahr could not, after due diligence, be found within the state of Idaho or at all; nor could the plaintiff, after due diligence, ascertain the residence or postoffice address of the said Mathilda Jahr. Order for publication of the *alias* summons was signed by the court on December 6, 1909, based upon the affidavit of respondent, and the *alias* summons was duly published in the "Idaho Register," a semi-weekly newspaper published at Idaho Falls. In due time the default of the appellant was taken, and on February 17, 1910, findings of fact and judgment were signed by the district judge of the sixth judicial district, quieting title in the respondent to lot 33, block 44.

It is admitted that there was no order made for the mailing of a copy of the summons and complaint to the appellant; and we think the record fully establishes the fact that she had no notice of said judgment until December, 1912.

This cause was tried at the September term, 1913, of the district court of the ninth judicial district, before the court without a jury and submitted. The court took the cause under advisement and afterward continued it to the January, 1914, term; and on the 5th day thereof signed his findings of fact and conclusions of law and rendered judgment for the respondent, quieting his title to lot 33, block 44. From that judgment this appeal is taken.

It is conceded, first, that during the three years succeeding the attempted sale of lot 33, block 44, Crow's Addition, the assessor failed to enter the taxes assessed against said lot on the assessment-roll in red ink (sec. 1755, Rev. Codes; *Parson v. Wrble,* 21 Ida. 695, 123 Pac. 638; *Griffith v. Anderson,* 22 Ida. 323, 125 Pac. 218; *Fix v. Gray,* 26 Ida. 19, 140 Pac. 771) ; second, that neither the assessor nor any of his deputies made or subscribed, in the assessment-book for 1904, the affidavit required by sec. 1727, Rev. Codes; third, that the taxes for 1904 were actually paid by appellant to the tax collector of Bingham county. It is therefore obvious that had the appellant appeared in the original action of *Curley v. Sanfield, supra,* that either one of these separate defenses would have

defeated the right of the respondent to quiet in him the title to lot 33, block 44, Crow's Addition.

We therefore come to the only question involved in this case, viz., the validity of the judgment in the case of *Curley v. Sanfield et al.* And for the purpose of inquiring into the validity of the judgment and in order to determine whether or not the trial court had jurisdiction of this appellant in the case of *Curley v. Sanfield, supra,* we are of the opinion that, under the authorities and in view of the peculiar facts of this case, it is our duty to inquire into the purported facts set out in respondent's affidavit presented to the court to obtain the order for the publication of the *alias* summons.

The affidavit made by respondent for publication of the summons in question states in substance that the defendant, Mathilda Jahr, cannot, after due diligence, be found within the state of Idaho or at all; nor can the plaintiff, after due diligence, ascertain the residence or postoffice address of the said Mathilda Jahr.

The defendant, Mathilda Jahr, as appears from the record, purchased lot 33, block 44, Crow's Addition, in the year 1892 and paid the taxes thereon up to and including 1904, as well as subsequent thereto up to and including 1912, except in 1905 when the property was not assessed and in 1909 when the taxes were refused. And with regard to this refusal of the taxes, we direct attention to 27 Am. & Eng. Ency. of Law, p. 755, which reads: "If the owner of land, or a party having interest therein, in good faith applies to the proper officer for the purpose of paying the tax thereon, and payment is prevented by the mistake or fault of such officer, . . . . the attempt to pay is considered, in most jurisdictions as the legal equivalent of payment in so far as to discharge the lien and bar a sale for nonpayment." Thus in *Breisch v. Coxe,* 81 Pa. St. 336, 346, the court in dealing with an attempt to pay taxes, observed: "It is an almost universal rule, which substitutes a tender for performance, when the tender is frustrated by the act of the party entitled to performance." Moreover, in case of *Taylor v. Debritz,* 48 Wash. 373, 93 Pac. 528, the court held: "Where plaintiff after purchasing cer-

tain land applied in good faith to the proper officer to pay the taxes thereon, and payment for one year was not made, because the taxing officer stated that there were no taxes unpaid or delinquent against the land except those which plaintiff had previously paid, a tax deed pursuant to a sale for taxes for the year for which the lands were in fact delinquent was void.''

The record title stood in the name of Mathilda Jahr. She held tax receipts properly signed by the various *ex-officio* tax collectors of Bingham county covering all of these years in the name of Mathilda Jahr, up to and including the year 1902. Thereafter the tax receipts, up to and including the year 1912, are in the name of Mrs. F. W. Lohr. In 1903 the tax receipt was made out to Mrs. F. Lohr. In 1904, when the error of the assessor was made and when, for the first and only time the error in description of the property appears, the tax receipt was made out in the name of F. W. Lohr. On the assessment-roll of Bingham county for that year appears the name of Mrs. F. W. Lohr, residence, Aurora, Ill., 434 Talma street and she is there assessed with lot 33, block 48, Crow's Addition, instead of lot 33, block 44, of Crow's Addition. In 1906, when the lot was again assessed, the name of Mrs. Fred Lohr appears upon the assessment-roll of Bingham county, and her residence is given as Aurora, Ill., 434 Talma street; and she is again correctly assessed with lot 33, block 44. On the assessment-roll of Bingham county for 1907 her name and address are given in full and she is assessed with lot 33, block 44; and that same information appears on the asssessment-roll for 1908.

It therefore appears that she is assessed with lot 33, block 44, with the one exception of 1904, from the year 1892, down to and including 1912. Upon the stubs of the tax receipts issued to her in the office of the tax collector of Bingham county appears the same information, no doubt, that is contained upon all of the receipts mailed to her at Aurora, Illinois.

During the years 1904, 1906, 1907 and 1908, while the respondent was waiting before, under the statute, he could

demand his deed from Bingham county, Mrs. Fred W. Lohr was remitting annually to the tax collector of Bingham county the amount of taxes due upon lot 33, block 44, before they became delinquent.

A consideration of the facts above mentioned in connection with respondent's affidavit for publication of the summons leads us to the irresistible conclusion that the court was not fully informed of these facts at the time the order for the publication of the summons was signed. Whether these facts were within the knowledge of the respondent at the time he made the affidavit, he alone knows. However, it is apparent to our minds that had he used the diligence that the law requires, all of these facts would have been known to him. Had he gone, as we believe it was his duty under the law to do, to the assessor and *ex-officio* tax collector of Bingham county, and inquired touching these matters, he no doubt would have been fully informed of the name and address of the owner of lot 33, block 44, Crow's Addition to the city of Idaho Falls.

And under the facts in this case, appellant could not well be expected to do more than conclusively establish the fact that the means of ascertaining her whereabouts were accessible to the respondent, had he used the diligence required under sec. 4145, Rev. Codes, as amended, Sess. Laws 1909, p. 186. She should not be required to produce evidence directly showing the condition of his mind on this subject.

In the case of *Bullock v. Wallace,* 47 Wash. 690, 92 Pac. 675, a case similar to the one here under consideration, the court said: "However regular the tax proceedings may have been upon their face, we could not regard respondents in the light of entire innocence, even were they entitled to interpose such defense here. The existence upon the record of the deed from the tax title grantee was in the nature of a danger signal, warning respondents to look out for obstructions in the stream of title. They ignored the signal, and steered ahead without regard to it. We do not mean to say that the deed from Benton to appellant conveyed actual title; but knowledge of its existence placed respondents in a posi-

tion differing with regard to good faith from that of the ordinary purchaser in a tax proceeding record which is fair upon its face. But, however fair the tax record may have been, if the taxes were in fact paid, the foreclosure proceedings and the deed thereunder were void.''

In the case at bar, the fact that the appellant was paying taxes on lot 33, block 44, during the years of 1906, 1907 and 1908, and had been paying taxes thereon since the year 1892 was a ''danger signal'' and should have been a warning to respondent sufficient to direct his attention to the record in the office of the assessor and *ex-officio* tax collector of Bingham county, which he disregarded.

Sec. 4145, Rev. Codes, as amended, Sess. Laws 1909, p. 186, was in force at the time of the attempted service by publication upon the defendant of the summons in the case of *Curley v. Sanfield, supra,* and provided:

''When the person on whom the service is to be made resides outside of the state, or has departed from the state, or cannot after due diligence be found within the state, or conceals himself therein to avoid the service of summons, and the fact appears by affidavit to the satisfaction of the court in which the suit is pending, or to the judge or to the clerk thereof in vacation, and it also appears by the verified complaint on file that a cause of action exists against the defendant in respect to whom the service is to be made, or that he is a necessary or proper party to the action, such court, or judge, or the clerk in the vacation of the court, may make an order for the publication of the summons, or, if the address of the defendant outside of the state is known may make an order that personal service of the summons may be made outside the state in lieu of such publication, and an affidavit setting forth in ordinary and concise language any of the grounds as above set forth upon which the publication of the summons is asked for, shall be sufficient without setting forth or showing what efforts have been made or what diligence has been exerted, in attempting to find the defendant.''

We do not understand from this section of the statute that it was not necessary for the respondent to use diligence

and to make the effort to ascertain the residence of the defendant required under the statute. The mere making of the assertion that after due diligence the defendant could not be found within the state or at all, nor could the plaintiff after due diligence ascertain the residence or postoffice address of the defendant is not a compliance with the statute. The diligence must have been used. And where it appears that there was no diligence used or effort made to ascertain the residence or the postoffice address of the defendant, and that had diligence been used this information would have been ascertained, and by reason of such negligence on the part of the plaintiff a fraud in fact is perpetrated upon the court, the judgment is void.

In the case of *Dunlap v. Steere,* 92 Cal. 344, 27 Am. St. 143, 28 Pac. 563, 16 L. R. A. 361, it was said: "We think the plaintiff is entitled to the relief which he asks, not only upon authority, but upon the plainest principles of justice. 'In general, it may be stated that in all cases where, by accident or mistake or fraud or otherwise, a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice and it is therefore against conscience that he should use that advantage, a court of equity will interfere, and restrain him from using the advantage which he has thus improperly gained.' (Story, Eq. Jur., sec. 885.) In order to justify the application of this rule, it must appear not only that the judgment against which relief is sought is unjust and unconscionable in itself, but that the person against whom it was rendered was not guilty of negligence in omitting to make his defense in the original action."

In the case of *Keister v. Rankin,* 34 App. Div. 288, 54 N. Y. Supp. 274, the court said: "It is never too late to do justice. When the ends of justice require that a new trial should be had, the supreme court may act, although the case may have been to the court of appeals and disposed of there." And in following this doctrine in the case of *Nugent v. Metropolitan St. Ry. Co.,* 46 App. Div. 105, 61 N. Y. Supp. 476, the court observed: "The court is constituted to enforce legal rights

and redress legal wrongs, and whenever it is made to appear, as it is in this case, that a wrong has been perpetrated, it never hesitates to exercise the power which it has, unless to do so would do a greater injury than to refuse to exercise it.'' (See, also, *Parsons v. Weis,* 144 Cal. 410, 77 Pac. 1007.)

In the case under consideration, the appellant paid the taxes due upon her lot each and every year before the same became delinquent, from 1892, down to and including 1912, with two exceptions, namely, in 1905 when there was no levy made, and in 1909 when the taxes were returned to her and when, without her knowledge, respondent obtained a deed.

The sale of her lot was based upon the failure to pay her taxes in 1904, when in truth and in fact the taxes were paid. Just as soon as the money was received by the duly authorized officer, the *ex-officio* tax collector of Bingham county, it was a payment of her taxes to Bingham county, of which Bonneville was then a part. The county had no lien upon her property for failure to pay taxes. When the county issued the certificate of sale to itself, it was not based upon any lien legally created against the property of the appellant. When the county assigned its certificate of sale and subsequently issued its deed to the respondent in this case, there was a total failure of consideration. Neither the certificate nor the deed carried title.

It was an unjust and unconscionable act so far as it affected the appellant. It deprived her of her property without due process of law when she had complied with each and every provision of the law affecting the payment of her taxes. She was penalized for her compliance with the law, and was made to suffer by reason of the negligence and carelessness of a public officer. (See *Burke v. Brown,* 148 Mo. 309, 49 S. W. 1023.)

As soon as she ascertained that her property had been sold for taxes, she immediately made application to the board of county commissioners to have the sale vacated and the deed canceled. It clearly appears that she was not aware of the bringing of the suit to quiet title, viz., the case of *Curley v. Sanfield, supra,* until December, 1912. She was therefore

guilty of no negligence in omitting to make her defense in the original suit, because she was not served with summons, constructive or otherwise, and had no notice of the pendency of such action. On the contrary, she was diligent, under the circumstances, in seeking to protect her rights immediately upon ascertaining that judgment had been rendered against her.

The case of *Hayes v. Los Angeles County,* 99 Cal. 74, 33 Pac. 766, we think is in point upon the proposition that where the taxes have been actually paid by the owner upon his property, but have been erroneously credited, the county has no right nor power to sell or in any manner affect or encumber the land by a sale thereof. The lien of the tax is gone; and as the implied right which, in the event of a failure to redeem, ripens into a title in the purchaser, has no existence, there is no consideration for the purchase money; and he who has paid it ought in justice to be entitled to recover it back.

From what has been said it follows that the court erred in its findings of fact No. 12 and its conclusions of law based thereon, to the effect that all of the defendants in the case of *Bowen Curley v. Henry M. Sanfield, Mathilda Jahr et al.,* were duly and regularly served with summons; that the court acquired jurisdiction over all those defendants; and that the plaintiff was the owner of lot 33, block 44, Crow's Addition to the original town of Eagle Rock, now city of Idaho Falls, Bingham county, and entitled to the possession thereof.

The trial court is hereby directed to vacate and set aside the judgment entered in this action in favor of respondent and to enter up judgment in favor of appellant, quieting title in her to lot 33, block 44, Crow's Addition to the city of Idaho Falls. Judgment for costs is awarded in favor of appellant.

Sullivan, C. J., and Morgan, J., concur.